JHT:hcs
AO 93 (Rev. 12/09) Search and Seizure Warrant

2020R00187

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE EMAIL ACCOUNTS IZZYBANKS09@GMAIL.COM AND JWILSON.NVD@GMAIL.COM THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE LLC | **SEALED BY ORDER OF THE COURT**<br><br>Case No. 21-mj-97 (TNL) |

## SEARCH AND SEIZURE WARRANT

To:          Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the State and District of Minnesota:

**See Attachment A, incorporated here.**

The person or property to be searched, described above, is believed to conceal:

**See Attachment B, incorporated here.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before          February 12, 2021
_____
(not to exceed 14 days)

X          in the daytime 6:00 a.m. to 10 p.m.          _ at any time in the day or night as I find reasonable
cause has been established.

You must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the current United States Magistrate Judge.

Date and Time issued: January 29, 2021, 5:02 pm          _Tony N. Leung_
_____
Judge's Signature

City and State:  St. Paul, MN          The Honorable Tony N. Leung
United States Magistrate Judge
_____
Printed Name and Title

Ex. b

AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
Executing officer's signature

SUBSCRIBED and SWORN before me
by reliable electronic means (FaceTime/Zoom
and email) pursuant to Fed. R. Crim. P. 41(d)(3)

_____
Printed Name and Title

_____          _____
U.S. Judge or Magistrate Judge                    Date

JHT:hcs

AO 106 (Rev. 04/10) Application for a Search Warrant                                                    2020R00187

# UNITED STATES DISTRICT COURT
for the
District of Minnesota

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE EMAIL ACCOUNTS IZZYBANKS09@GMAIL.COM AND JWILSON.NVD@GMAIL.COM THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE LLC | **SEALED BY ORDER OF THE COURT**<br><br>Case No. 21-mj-97 (TNL) |

## APPLICATION FOR A SEARCH WARRANT

I, Julie S. Barrows, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, incorporated here**

located in the State and District of Minnesota, there is now concealed:

**See Attachment B, incorporated here**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    __X__    evidence of a crime;

    __X__    contraband, fruits of crime, or other items illegally possessed;

    __X__    property designed for use, intended for use, or used in committing a crime;

    _____    a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| Title 18, United States Code, Section 2421 | Mann Act |
| Title 18, United States Code, Sections 1956 and 1957 | Money Laundering |
| Title 18, United States Code, Section 1343 | Wire Fraud |
| Title 18, United States Code, Section 371 | Conspiracy |

The application is based on these facts:

**See Affidavit, incorporated here**

    __X__    Continued on the attached sheet.

_____
*Applicant's Signature*

SUBSCRIBED and SWORN before me
by reliable electronic means (FaceTime/Zoom
and email) pursuant to Fed. R. Crim. P. 41(d)(3)

Date:     January 29, 2021

City and State:  St. Paul, MN

Julie S. Barrows, Postal Inspector
United States Postal Inspection Service
_____
*Printed Name and Title*

_____
*Judge's Signature*

The Honorable Tony N. Leung
United States Magistrate Judge
_____
*Printed Name and Title*

SW_00000061

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

IN THE MATTER OF THE SEARCH OF
EMAIL ACCOUNTS
IZZYBANKS09@GMAIL.COM and
JWILSON.NVD@GMAIL.COM
THAT ARE STORED AT PREMISES
CONTROLLED BY GOOGLE INC.

Case No. 21-mj-97 (TNL)

**Filed Under Seal by Order of the Court**

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Julie Barrows, being first duly sworn, do state the following is true and correct to the best of my knowledge and belief:

1. I make this Affidavit in support of an Application for a Search Warrant for information associated with the email accounts izzybanks09@gmail.com ("**Subject Account 5**") and jwilson.nvd@gmail.com ("**Subject Account 6**") (collectively, the "Subject Accounts") that are stored at premises owned, maintained, controlled, or operated by Google Inc., a email provider headquartered at 1600 Amphitheater Parkway, Mountain View, California 94043. The information to be searched is described in the following paragraphs and in Attachment A, which is incorporated herein by reference. This Affidavit is made in support of an Application for a Search Warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google Inc. to disclose to the Government records and other information in its possession, pertaining to the Subject Accounts.

2. I am a Postal Inspector with the U.S. Postal Inspection Service (USPIS) and have been since March 2020, before which I was a Special Agent with the Internal Revenue Service – Criminal Investigations and the Office of Inspector General for the

U.S. Department of Agriculture. I have been a federal agent for 11 years. My duties include investigating fraud and other financial crimes in violation of federal criminal statutes. My duties also include investigating potential cases of child exploitation. In this capacity, I have been involved in investigating violations of various statutes relating to child pornography and sex trafficking, among others. I have gained knowledge and experience through training and everyday work in conducting these types of investigations. During the course of numerous investigations, I have conducted searches pursuant to federal search warrants covering physical premises as well as electronic service providers.

3.      The facts in this Affidavit come from my training and experience, information provided by witnesses, and information provided to me by other law enforcement officers. This Affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this Affidavit, there is probable cause to believe that located in the Subject Accounts are evidence, fruits, and/or contraband relating to violations of the following federal statutes: 18 U.S.C. § 2421 (Mann Act), 18 U.S.C. § 1951 (sex trafficking), 18 U.S.C. §§ 1956 and 1957 (money laundering), 18 U.S.C. § 1343 (wire fraud), and 18 U.S.C. § 371 (conspiracy). There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## PROBABLE CAUSE

5.     This is an investigation into a commercial sex and money laundering operation. As explained below, the Eden Prairie Police Department has received multiple tips that Gabriel Langford, also known as Gabriel Luthor, and others appear to be involved in sex trafficking and related offenses.

### A.     Eden Prairie Police received a tip about Langford's sex trafficking in May 2019

6.     In May 2019, the Eden Prairie Police Department received a tip that Gabriel Langford may be involved in sex trafficking. The tip came from the spa manager at a hair salon and spa located in Eden Prairie ("Individual S.M."). Individual S.M. reported that on the morning of May 7, 2019, two adult women arrived together for hairstyle appointments. The women were both new clients. The women drew attention because they were dressed in "sexy" attire and wore full makeup for their appointments. Individual S.M. said their attire was unlike that typically worn to a hair salon and more like the type of clothes a woman would wear to a nightclub. One of the women—Elizabeth Brown—had blond hair and appeared to be in her thirties. The other woman had brown hair and appeared to be in her early twenties. Individual S.M. said that Brown appeared to be in charge and that she answered all of the questions about the younger woman's hair and made the decisions about her salon services.

7.     While the women were receiving their salon services, a man arrived with a third woman who appeared to be in her early twenties. The man, who Individual S.M. later identified as Gabriel Langford, was an approximately 35-year old African American man with manicured facial hair and eyebrows. According to Individual S.M.,

SW_00000064

Langford appeared to be in charge of all three women. Langford and the women all left together.

8.    After the appointment, Individual S.M. looked up Brown's Instagram account and found that she was using **Subject Account 2**. Individual S.M. viewed **Subject Account 2** and confirmed that it belonged to Brown and that Brown was one of the women present at the salon. Individual S.M. recognized photos of the African American male who came into the salon on **Subject Account 2**. Comments on **Subject Account 2** showed that the man had his own Instagram account, **Subject Account 1**.

9.    Individual S.M. told police she believed the man had a sex trafficking relationship with the women. She explained that the women did not appear to be able to speak for themselves and the man seemed so controlling about their look. She also found their sexy clothing and makeup to be unusual and suspicious in light of the time and circumstances of their appointment.

10.    Individual S.M. later told Eden Prairie police that the women had returned for additional appointments in 2019. Individual S.M. learned that the other two women present during the initial (and later) appointments were Jade Wilson and Brianna Hughes. During later appointments, Brown described herself as a psychiatrist who traveled to Nevada frequently.

**B.    Eden Prairie Police received a second tip about Langford's sex trafficking in July 2020**

11.    In July 2020, the Eden Prairie Police Department received another report about potential sex trafficking involving Langford, Brown, and Wilson. Individual J.R. contacted the police department. Individual J.R. is a 34-year old woman from Las

Vegas, Nevada. Individual J.R. explained that on June 18, 2020, she applied for a job as an office manager at Golden Victory Medical. Golden Victory Medical was a behavioral health company in Las Vegas that saw "at-home" patients. On or about July 10, 2020, Individual J.R. received a call from a Golden Victory Medical employee who identified herself as "Jade." As explained below, "Jade" was later identified as Jade Elizabeth Wilson. Wilson spoke with Individual J.R. about the position and Individual J.R.'s background and experience.

12.    Wilson offered to speak with Individual J.R. via FaceTime to make her feel more comfortable. Individual J.R. had a FaceTime conversation with Wilson and another woman, Elizabeth Brown. Wilson and Brown explained they needed assistance in "revamping" the operations and billing through their Las Vegas office. Wilson and Brown asked to meet with Individual J.R. the following day in Minneapolis, Minnesota.

13.    On July 10, 2020, Brown sent a non-disclosure agreement to Individual J.R. Brown sent the non-disclosure agreement via an electronic signing program called DocuSign. The email directed any replies be sent to izzybanks09@gmail.com, also known as **Subject Account 5**.

SW_00000066



From: Elizabeth Brown via DocuSign <dse@docusign.net>
Date: July 10, 2020 at 2:26:50 PM PDT
To:
Subject: Completed: Please DocuSign: Non-Disclosure Agreement.pdf
Reply-To: "Elizabeth Brown" <izzybanks09@gmail.com>

DocuSign

Your document has been completed

VIEW COMPLETED DOCUMENT

Elizabeth Brown

izzybanks09@gmail.com

All parties have completed Please DocuSign: Non-Disclosure Agreement.pdf.

Hello, in the first section to avoid any confusion- it has several blank fields under where you would enter your name and those blanks are for your address: street, city, state, zip code.

14.    The non-disclosure agreement was between Individual J.R. and Golden Victory Medical. It explained:

> Information will be disclosed to the Recipient to determine whether the Recipient could assist Golden Victory Medical, and upon working with or for the company the Recipient will be held to the same restrictions.

> The Owner has requested and the Recipient agrees that the Recipient will protect confidential material and information which may be disclosed between the Owner and Recipient.

15.    Individual J.R. electronically signed the non-disclosure agreement. Brown signed the agreement on behalf of Golden Victory Medical.

16.     That same day, Wilson sent an email with the subject line "Travel Information" from **Subject Account 6** (jwilson.nvd@gmail.com) to Individual J.R. The email contained information about the flight and hotel that had been booked for Individual J.R.

---

**From:** Jade Wilson <jwilson.nvd@gmail.com>
**Date:** July 10, 2020 at 3:17:23 PM PDT
**To:** ███████████████
**Subject: Travel information**


Travel details:

Flight from LAS to MSP 7/11/20, takeoff 9:15am landing 2:11pm. Confirmation #JP3CEA.Current status states a 10 minute delay in flight times. One carry on bag and one personal item included. Boarding pass attached.

Hotel room booked at Radisson Blu at Mall of America, confirmation #W0KTNJ1. Checking in 7/11/20, checking out 7/13/20.

Flight from MSP to LAS 7/13/20 takeoff 6:10pm landing 7:23pm. Same confirmation number, not able to check-in or view boarding pass until 24 hours prior to flight time.

Please let me know if you have any questions!

---

17.     Prior to flying to Minneapolis, Individual J.R. looked up Brown's National Provider Identifier number[1] and found that Brown had previously worked with one of Individual J.R.'s professional contacts ("Individual D.F."). When Individual J.R. told Brown about the common connection, Brown warned her not to mention Individual D.F. to Langford, the owner of Golden Victory Medical, when she met with him the following day because they no longer did business with Individual D.F.

---

[1]     A National Provider Identifier is a unique 10-digit identification number issued to health care providers in the United States by the Centers for Medicare and Medicaid Services

18.    The following day—July 11, 2020—Individual J.R. flew first class from Las Vegas to Minneapolis. Golden Victory Medical paid for the flight. Individual J.R. felt uncomfortable going on the trip alone so her husband came with her on the trip. Prior to leaving, Individual J.R. also notified several family members of her destination and allowed them to access her cell phone's location.

19.    Upon her arrival in Minneapolis, Individual J.R. was picked up in a limousine. The limousine ride was arranged by Golden Victory Medical. The limo took Individual J.R. to the Radisson Blu hotel at the Mall of America. According to Individual J.R., her hotel reservations were also made by Golden Victory Medical and Individual J.R. did not pay for the room. After Individual J.R. checked into the hotel, the limo drove her to a house located at 11631 Welters Way in Eden Prairie. Individual J.R.'s husband did not accompany her to the meeting.

20.    Individual J.R. described 11631 Welters Way as a large house with two stone lions in the front. When Individual J.R. arrived for the meeting, a black Mercedes was parked in the driveway.

21.    Individual J.R. met with Wilson, Brown, Langford, and an unknown female at the house. According to Individual J.R., Brown was dressed in provocative clothing and Langford wore a suit. Individual J.R. said the other female had braces and appeared to be 16 to 18 years old.

22.    According to Individual J.R., Langford ran the meeting. He talked about the company and the position. When Individual J.R. asked about everyone's role in the company, Langford responded "We are all together. Is that a problem?" Individual J.R. assured Langford it was not a problem, but she became uncomfortable. Individual J.R.

talked about Kareo, a well-known company that provides software for medical offices but no one appeared to have any idea what she was talking about. This caused Individual J.R. to become suspicious about the legitimacy of their company (Golden Victory Medical).

23.    Individual J.R. said that the women did not speak during the meeting. Individual J.R. believed that women were scared because they kept looking from person to person and looked pale. While at the house, Individual J.R. noticed that only a few of the rooms were furnished.

24.    After about an hour and 15 minutes, Individual J.R. asked to leave and return to her hotel. Individual J.R. was required to sign a non-disclosure agreement before she left. Langford then left and Individual J.R. took an Uber back to her hotel. Once back at her hotel, Individual J.R. received a call from Langford, who explained that Individual J.R. was not a good fit for the company. Individual J.R. purchased return flights to Las Vegas for herself and her husband.

25.    The day after she met with Langford, Individual J.R. sent a text to Wilson saying that the meeting was "weird as fuck" and "wasn't about business." Individual J.R. told Wilson that she "look[ed] like you just got fucking kidnapped" and that she should "tell that dude [Langford] to stop using sharpies on his eyebrows." This description of Langford's eyebrows appears to be consistent with photos posted on the Subject Accounts.



26.     Wilson responded by reminding Individual J.R. that she "signed an NDA" and that "Gabriel [Langford] is well known to enforce every contract." Wilson further said that "[a]ny attempt to harm the business will be dealt with through our legal team."

27.     The following day (July 13, 2020), Individual J.R. called 911 to report Langford for potential human trafficking and fraud. Individual J.R. later provided copies of text messages she exchanged with Wilson prior to and after her trip to Minneapolis.

### C.    The Langford House

28.    According to the city of Eden Prairie Inspections Division, Flip Funding, LLC, purchased 11631 Welters Way, Eden Prairie, Minnesota, on or about March 22, 2019, for approximately $994,900. Later that same day, Brown put down $315,000 in cash on a contract for deed from Flip Funding, LLC. The terms of the contract for deed show a purchase price of $1,049,000, with a balance owed of $734,700. With an interest rate of 7%, Brown would make monthly payments of $6,429 for 61 months with a balloon payment of $342,531 due on March 22, 2024. The residence is a 9,890 square foot single-family home.



29.    On or about January 22, 2020, an Eden Prairie city building inspector contacted the Eden Prairie Police Department about possible sex trafficking or prostitution at 11631 Welters Way. The building inspector had been told about the activity by a city plumbing inspector. The plumbing inspector told officers that he had recently conducted a plumbing inspection at 11631 Welters Way. The inspection

SW_00000072

related to ongoing renovation work on the property. The plumbing inspector reported that he saw suspicious activity in the residence. Specifically, the basement had several unusual features, including a large "grotto-style" hot tub and what the inspector described as a large "gang shower" for multiple people to shower at the same time. The plumbing inspector said he had never seen anything like the gang shower. The basement also had a glassed-in solarium room with a door that the plumbing inspector believed to be a place to view and pick women.

30.    The plumbing inspector also inspected the upstairs bathroom. According to the plumbing inspector, Langford and a woman later identified as Brown stood in the staircase in a manner that appeared to be designed to deter the inspector from going upstairs. Although it was only 9:00 a.m., Brown was in full makeup. The inspector reported that there were approximately six women upstairs. The inspector said the women appeared to be 18-25 years old. The plumbing contractor was present with the plumbing inspector and told the inspector that the women were all Langford's girlfriends. The inspector told police he believed Langford was acting as a pimp for the women.

31.    The plumbing inspector identified a photo of Langford as the man he saw. He also identified photos of Brown, Wilson, and Hughes as the women he saw at the residence.

32.    On or about January 25, 2021, an Eden Prairie Police officer conducted a trash pull at 11631 Welters Way. The officer recovered: (a) mail addressed to Brown; (b) a prescription for contraceptive addressed to Wilson; (c) a prescription issued by Brown to Wilson for an antibiotic that is used to treat, among other things, vaginal

infections. In my training and experience, I know that possession of these sorts of prescriptions may be consistent with commercial sex.

### D.   Golden Victory Medical LLC

33.   According to Nevada Secretary of State records, Golden Victory Medical LLC is a limited liability company located in Henderson, Nevada. Langford and Brown are listed as the company's managers. According to the company's Facebook page, Golden Victory Medical offers "medication management, neurofeedback, and psychological testing to patients of all ages for the Las Vegas and surrounding areas." Wilson's LinkedIn account identifies her as the "Practice Manager" at Golden Victory Medical.

34.   Golden Victory Medical has a business account at Bank of America. Records obtained from Bank of America show that Langford and Brown are both signatories on the account. The signature card identified them both as a "managing member" of the company.

35.   The government obtained records related to accounts held by Langford, Brown, and Wilson at Bank of America. A review of these account shows that Langford, Brown, and Wilson regularly send money back and forth in a suspicious manner.

36.   For example, in January 2018, Brown transferred nearly $9,000 to Langford via Zelle, an online payment app. This represented all of the deposits into Langford's account that month.



## Deposits and other additions

**Bank of America** — Your checking account

GABRIEL ADAM ALEXANDER LANGFORD | Account # | December 23, 2017 to January 25, 2018

We have a new requirement for making cash deposits to our consumer accounts.
You will now need to be an owner or authorized user on the account to make a cash deposit to a personal checking or savings account with an associate in our financial centers. This change helps us reduce risks from cash transactions involving persons who are not authorized on an account.

| Date | Description | Amount |
|---|---|---|
| 01/08/18 | Zelle Transfer Conf# bdb77162a; BROWN, ELIZABETH | 1,000.00 |
| 01/08/18 | Zelle Transfer Conf# T04567B3P; ELIZABETH BROWN | 999.99 |
| 01/08/18 | Zelle Transfer Conf# 535cf571c; BROWN, ELIZABETH | 200.00 |
| 01/11/18 | Zelle Transfer Conf# T045HXH6Z; ELIZABETH BROWN | 1,000.00 |
| 01/16/18 | Zelle Transfer Conf# T045TM99V; ELIZABETH BROWN | 999.99 |
| 01/16/18 | Zelle Transfer Conf# 23acdf8c4; BROWN, ELIZABETH | 500.00 |
| 01/18/18 | Zelle Transfer Conf# 017b7105c; BROWN, ELIZABETH | 999.99 |
| 01/18/18 | Zelle Transfer Conf# T0467SX95; ELIZABETH BROWN | 999.99 |
| 01/22/18 | Zelle Transfer Conf# 066a59bec; BROWN, ELIZABETH | 999.99 |
| 01/22/18 | Zelle Transfer Conf# T046LK6YB; ELIZABETH BROWN | 999.99 |
| 01/22/18 | Zelle Transfer Conf# XXXXXXXXX; BROWN, ELIZABETH | 300.00 |
| **Total deposits and other additions** | | **$8,999.94** |

37.     Similarly, in February 2019, Langford received more than $10,000 in cash transfers from Brown.

**Bank of America**

GABRIEL ADAM ALEXANDER LANGFORD | Account # | February 23, 2019 to March 25, 2019

## Deposits and other additions

| Date | Description | Amount |
|---|---|---|
| 02/25/19 | Zelle Transfer Conf# 00fea6c67; BROWN, ELIZABETH | 2,500.00 |
| 03/04/19 | Zelle Transfer Conf# a1cd3258a; BROWN, ELIZABETH | 1,500.00 |
| 03/04/19 | Zelle Transfer Conf# 18b6e7bc3; BROWN, ELIZABETH | 1,000.00 |
| 03/04/19 | Zelle Transfer Conf# 00ac27145; BROWN, ELIZABETH | 600.00 |
| 03/04/19 | Zelle Transfer Conf# d0543a005; BROWN, ELIZABETH | 400.00 |
| 03/08/19 | Zelle Transfer Conf# eadb485df; BROWN, ELIZABETH | 2,500.00 |
| 03/13/19 | Zelle Transfer Conf# ab28d3b9f; BROWN, ELIZABETH | 500.00 |
| 03/15/19 | Zelle Transfer Conf# 760fed6ee; BROWN, ELIZABETH | 2,000.00 |
| 03/18/19 | Zelle Transfer Conf# 3a5018578; BROWN, ELIZABETH | 1,800.00 |
| 03/20/19 | Zelle Transfer Conf# 7a1ba0349; BROWN, ELIZABETH | 500.00 |
| 03/20/19 | Zelle Transfer Conf# 89c3521c2; BROWN, ELIZABETH | 500.00 |
| 03/22/19 | Zelle Transfer Conf# 08f6ab564; BROWN, ELIZABETH | 500.00 |
| 03/25/19 | NV TLR transfer | 7,000.00 |
| **Total deposits and other additions** | | **$21,300.00** |

SW_00000075

38.    According to records obtained from Feldman Imports, Langford purchased a 2019 Mercedes Benz AMG GT Roadster for approximately $130,000 in July 2019. On the financing paperwork, Langford identified himself as the CEO of Golden Victory Medical and that he made $83,333 per month, which is equivalent to $999,961 a year.

### E.    The Instagram Accounts

39.    The investigation has shown that Langford, Brown, Wilson, and Hughes all have Instagram accounts.

40.    The government has reviewed **Subject Account 1**, which belongs to Langford. Langford has posted many photos of himself with Brown, Wilson, and Hughes on **Subject Account 1**. Brown, Wilson, and Hughes left comments about these photos on **Subject Account 1** using their own Instagram accounts. Brown and Wilson have left comments about these photos on **Subject Account 1**. For example, on or about December 2, 2019, Brown (using **Subject Account 2**) commented on a photo of Langford and Brown posted on **Subject Account 1**. Brown (using **Subject Account 2**) left a comment about the photo on **Subject Account 1** that read "This guy, no one gives more, endless love and ambition, drive, and leaders--@luthorgabriel you're so much more than words can say. #lovehim #justdoit #drive #ambition."

41.    On or about September 12, 2019, Langford posted a photo of himself and Wilson on **Subject Account 1**. Wilson (using **Subject Account 3**) commented about the photo on **Subject Account 1**. Wilson wrote "We so cute. #hestheman #babe #vegastrip."

42.    On or about May 30, 2020, Brown posted photos of the pool at 11631 Welters Way on **Subject Account 2**. On or about October 13, 2019, Brown posted a

photo of herself, Wilson, Hughes, and Mitchell on **Subject Account 2**. Brown wrote "Relaxing evening out with my ladies. #lovethem #gno." On or about May 30, 2020, Brown posted photos of the new pool at 11631 Welters Way on **Subject Account 2**.

43.    On or about February 8, 2020, Brown posted to **Subject Account 2** a photo of her and Hughes. Brown also posted a message related to the photo: "Happy Birthday Beautiful Bri! To the most loving gentle patient soul I know . . . you have taught me to always have fun, be a mermaid, make a wish with every eyelash and dandelion you blow away, build a fort and sleep in it, have a pillow fight make everyday fun and never forget to dance, sing, and play I love you Bri . . ."

44.    Hughes uses **Subject Account 4**. The homepage for **Subject Account 4** shows a photo of Hughes with Langford. The account is set to private.

45.    In my training and experience on these types of social media posts, individuals often communicate on these platforms, including Instagram, to drive traffic to other sites, gather individuals for a common interest, and/or for marketing purposes.

## BACKGROUND CONCERNING EMAIL

46.    In my training and experience, I have learned that GOOGLE INC. provides a variety of on-line services, including electronic mail ("email") access, to the public. GOOGLE INC. allows subscribers to obtain email accounts at the domain name gmail.com, like the email account listed in Attachment A.  Subscribers obtain an account by registering with GOOGLE INC.  During the registration process, GOOGLE INC. asks subscribers to provide basic personal information.  Therefore, the computer servers of GOOGLE INC. are likely to contain stored electronic communications (including retrieved and unretrieved email for GOOGLE INC. subscribers) and

information concerning subscribers and their use of GOOGLE INC. services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. In my training and experience, I know that even if a user attempted to delete various information, much of this subscriber information may still exist, and in addition, deleted information may still be available.

47. A GOOGLE INC. subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by GOOGLE INC. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

48. In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provides clues to their identity, location, or illicit activities.

49.    In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

50.    In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

51.    This application seeks a warrant to search all responsive records and information under the control of GOOGLE INC., a provider subject to the jurisdiction

of this court, regardless of where GOOGLE INC. has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within GOOGLE INC.'s possession, custody, or control, regardless of whether such communication, record, or other information is store, held, or maintained outside the United States.

52.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the IP addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This

geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

53.    Based on the foregoing, I request that the Court issue the proposed search warrant for the contents of the Subject Accounts. Because the warrant will be served on Google INC. who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Julie Barrows
Postal Inspector
United States Postal Inspection Service

SUBSCRIBED and SWORN before me
by reliable electronic means (FaceTime/Zoom and
email) pursuant to Fed. R. Crim. P. 41(d)(3)
on January 27, 2021

THE HONORABLE TONY N. LEUNG
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

This warrant applies to all information associated with izzybanks09@gmail.com and jwilson.nvd@gmail.com that is stored at premises owned, maintained, controlled, or operated by GOOGLE INC., a company headquartered at 1600 Amphitheater Parkway, Mountain View, CA 94043.

SW_00000082

## ATTACHMENT B

### Particular Things to be Seized

**I.    Information to be disclosed by GOOGLE INC. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, regardless of whether such information is stored, held, or maintained inside or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a.    The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.    All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.     The types of service utilized;

d.     All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e.     All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

f.     For all information required to be disclosed pursuant to this warrant, the physical location or locations where the information is stored.

The Provider is hereby ordered to disclose the above information to the government within fourteen days of the issuance of this warrant.

SW_00000084

## II.    Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of Title 18, United States Code, Sections 1591 (Sex Trafficking by Use of Force, Fraud, or Coercion), 1594 (Conspiracy to Commit Sex Trafficking by Use of Force, Fraud, or Coercion), and 2421 (Interstate Transport for Prostitution), occurring between January 1, 2019, to January 29, 2021, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Evidence of sex trafficking and Mann Act violations, to include evidence of force, threats of force, fraud, or coercion; evidence of commercial sex work, to include advertisements and communication with commercial sex purchasers; evidence of travel, including travel between Las Vegas, Nevada, and Minneapolis, Minnesota;

(b) Evidence of the relationships between Gabriel Langford, also known as Gabriel Luthor, and Elizabeth Brown, Jade Wilson, and Brianna Hughes, to include their financial and professional relationships;

(c) Evidence about the business of Golden Victory Medical, including financial records;

(d) The identity of the person(s) who communicated with the user ID about matters relating to sex trafficking, commercial sex work, money laundering, and health care/wire fraud including records that help reveal their whereabouts.

(e) Attribution evidence, to include the identity of the person(s) who created or used the user ID and records that help reveal the whereabouts of such person(s);

(f) Evidence of how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(g) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(h) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(i) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation;

(j) The identity of the person(s) who created or used the user ID.

(k) The identity of the person(s) who communicated with the user ID about matters relating to sex trafficking, including records that help reveal their whereabouts.

SW_00000086

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct. I am employed by GOOGLE INC. and my official title is _____. I am a custodian of records for GOOGLE INC. I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of GOOGLE INC. and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.    all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.    such records were kept in the ordinary course of a regularly conducted business activity of GOOGLE INC.; and

c.    such records were made by GOOGLE INC. as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____
Date

_____
Signature

SW_00000087

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-mj-97 (TNL)

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE EMAIL ACCOUNTS IZZYBANKS09@GMAIL.COM AND JWILSON.NVD@GMAIL.COM THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE LLC | **SEALED BY ORDER OF THE COURT** PETITION OF THE UNITED STATES FOR AN ORDER SEALING SEARCH WARRANT, AFFIDAVIT, RETURN, PETITION AND ORDER FOR SEALING |

COMES NOW the United States of America by its undersigned attorneys and in support of its Petition for an Order Sealing Search Warrant, Affidavit, Return, and Petition in the above-captioned matter, states as follows:

1.     On January 29, 2021, The Honorable Tony N. Leung issued a warrant authorizing the search of information stored in the servers that are associated with the email accounts izzybanks09@gmail.com and jwilson.nvd@gmail.com that are stored at premises controlled by Google LLC.

2.     The Affidavit of Postal Inspector Julie S. Barrows, submitted in support of the search warrant, sets forth facts regarding an ongoing investigation into violations of the following federal statutes: 18 U.S.C. § 2421 (Mann Act), 18 U.S.C. §§ 1956 and 1957 (money laundering), and 18 U.S.C. § 1343 (wire fraud),  and 18 U.S.C. § 371 (conspiracy).

3.     The search warrant documents presented to this Court for *in camera* review include detailed and highly sensitive investigative information.  Disclosure of the information would jeopardize an ongoing investigation into alleged criminal

offenses and the privacy of individuals unlikely to be, and/or who may ultimately not be, indicted.

4.      Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised. Immediate public filing of the search warrant documents would, *inter alia*, compromise details about the nature, extent, and scope of the investigation. This would be particularly problematic where, as here, much of the evidence is stored electronically, and therefore may be quickly and remotely destroyed. Further, the investigation reflects the use of multiple false identities, international ties, and access to considerable quantities of money, all of which could facilitate targets' flight from prosecution if notified about the investigation.

5.      The Court's power to prevent disclosure of its files, especially for a limited period of time, is well established. This general power has been recognized by the United States Supreme Court.

> It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over some records and files and access has been denied where court files might have become a vehicle for improper purposes.

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978).

6.      The Eighth Circuit has recognized the Court's specific power to restrict access to search warrant documents like those at issue here:

> We hold that the qualified first amendment right of public access extends to the documents filed in support of search warrants and that the documents may be sealed if the district court specifically finds that sealing is necessary to protect a compelling government interest and that less restrictive alternatives are impracticable.

*In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 574 (8th Cir. 1988).

7.    The Eighth Circuit and district courts within the Circuit have recognized that the circumstances surrounding ongoing investigations constitute compelling government interests warranting the sealing of search warrant documents. For example, the Eighth Circuit has approved sealing search warrant documents that "describe[d] in detail the nature, scope and direction of the government's investigation and the individuals and specific projects involved," resulting in "substantial probability that the government's on-going investigation would be severely compromised if the sealed documents were released." *Gunn*, 855 F.2d at 574. Moreover, the Eighth Circuit has recognized that search warrant affidavits permeated with references to individuals other than the subjects of the search warrant and/or with information revealing the nature, scope and direction of the government's ongoing investigation may be sealed not only because they present compelling government interests justifying sealing, but also because less restrictive alternatives to sealing are in such circumstances impracticable. *Id.*

8.    Based upon the foregoing and all the files and proceedings to date, the United States respectfully requests that this Court issue an Order Sealing the Warrant, Application, Affidavit of Postal Inspector Julie S. Barrows, Return, this Petition, and the Sealing Order until the close of business on July 29, 2021, unless a compelling interest is shown by the United States for a continuation of the sealing.

Dated:  January 29, 2021

Respectfully submitted,

ERICA H. MacDONALD
United States Attorney

*s/ Joseph H. Thompson*

BY:    JOSEPH H. THOMPSON
EMILY A. POLACHEK
Assistant U.S. Attorneys

SW_00000091

2020R00187

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-mj-97 (TNL)

IN THE MATTER OF THE SEARCH
OF INFORMATION ASSOCIATED
WITH THE EMAIL ACCOUNTS
IZZYBANKS09@GMAIL.COM AND
JWILSON.NVD@GMAIL.COM THAT
ARE STORED AT PREMISES
CONTROLLED BY GOOGLE LLC

**SEALED BY ORDER OF THE COURT**

ORDER FOR SEALING

This Court, having reviewed the Petition of the United States herein, finds that the United States has shown a compelling interest in the sealing of documents in the above-captioned matter because:

    a.    Nondisclosure of the search warrant documents is necessary to prevent the ongoing investigation from being compromised.

    b.    Nondisclosure of the search warrant documents is necessary to protect the privacy of an individual who may ultimately remain unindicted.

This Court also finds that less restrictive alternatives to sealing are impracticable or not appropriate.

It is therefore:

ORDERED that all documents filed in the above-captioned matter are hereby sealed until the close of business on July 29, 2021.

IT IS FURTHER ORDERED that these documents will be unsealed at the above time unless further compelling interest is shown by the United States for continuing this Order for an additional period of time.

January 29, 2021
Date

The Honorable Tony N. Leung
United States Magistrate Judge

2

SW_00000093

2020R00187

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-mj-97 (TNL)

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
THE EMAIL ACCOUNTS
IZZYBANKS09@GMAIL.COM AND
JWILSON.NVD@GMAIL.COM THAT
ARE STORED AT PREMISES
CONTROLLED BY GOOGLE LLC

**SEALED BY ORDER OF THE
COURT**

**APPLICATION FOR ORDER COMMANDING GOOGLE LLC NOT TO
NOTIFY ANY PERSON OF THE EXISTENCE OF WARRANT**

The United States requests that the Court order Google LLC not to notify any person (including the subscribers or customers of the account(s) listed in the warrant) of the existence of the attached warrant until July 29, 2021.

1.     Google LLC Inc. is a provider of an electronic communication service, as defined in 18 U.S.C. § 2510(15), and/or a remote computer service, as defined in 18 U.S.C. § 2711(2). Pursuant to 18 U.S.C. § 2703, the United States obtained the attached warrant, which requires Google LLC to disclose certain records and information to the United States. This Court has authority under 18 U.S.C. § 2705(b) to issue "an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order." *Id.*

2.     In this case, such an order would be appropriate because the attached warrant relates to an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation, and its disclosure may alert the targets to

the ongoing investigation. Accordingly, there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5). Some of the evidence in this investigation is stored electronically. If alerted to the investigation, the subjects under investigation could destroy that evidence, including information saved to their personal computers.

3. WHEREFORE, the United States respectfully requests that the Court grant the attached Order directing Google LLC not to disclose the existence or content of the attached warrant until July 29, 2021, except that Google LLC may disclose the attached warrant to an attorney for Google LLC for the purpose of receiving legal advice.

2

4.      The United States further requests that the Court order that this application and any resulting order be sealed until July 29, 2021. As explained above, these documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Dated:  January 29, 2021                              Respectfully submitted,

                                                     ERICA H. MacDONALD
                                                     United States Attorney

                                                     *s/ Joseph H. Thompson*
                                         BY:   JOSEPH H. THOMPSON
                                                     EMILY A. POLACHEK
                                                     Assistant U.S. Attorneys

3

SW_00000096

2020R00187

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-mj-97 (TNL)

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
THE EMAIL ACCOUNTS
IZZYBANKS09@GMAIL.COM AND
JWILSON.NVD@GMAIL.COM THAT
ARE STORED AT PREMISES
CONTROLLED BY GOOGLE LLC

**SEALED BY ORDER OF THE
COURT**

## ORDER

The United States has submitted an application pursuant to 18 U.S.C. § 2705(b), requesting that the Court issue an Order commanding Google LLC, an electronic communications service provider and/or a remote computing service, not to notify any person (including the subscribers or customers of the account(s) listed in the warrant) of the existence of the attached warrant until July 29, 2021.

The Court determines that there is reason to believe that notification of the existence of the attached warrant will seriously jeopardize the investigation, including by giving targets an opportunity to flee or continue flight from prosecution, destroy or tamper with evidence, change patterns of behavior, or notify confederates. *See* 18 U.S.C. § 2705(b)(2), (3), (5).

IT IS THEREFORE ORDERED under 18 U.S.C. § 2705(b) that Google LLC shall not disclose the existence of the attached warrant, or this Order of the Court, to the listed subscriber or to any other person, until July 29, 2021, except that Google LLC may disclose the attached warrant to an attorney for Google LLC for the purpose of receiving legal advice.

SW_00000097

IT IS FURTHER ORDERED that the application and this Order are sealed until July 29, 2021.

January 29, 2021

Date

The Honorable Tony N. Leung
United States Magistrate Judge

2

SW_00000098

2020R00187

## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA
Case No. 21-mj-97 (TNL)

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH THE EMAIL ACCOUNTS IZZYBANKS09@GMAIL.COM AND JWILSON.NVD@GMAIL.COM THAT ARE STORED AT PREMISES CONTROLLED BY GOOGLE LLC | **SEALED BY ORDER OF THE COURT**<br><br>APPLICATION OF THE UNITED STATES FOR AN EXTENSION OF TIME TO EXECUTE SEARCH WARRANT |

COMES NOW the United States of America, by its undersigned attorneys and in support of an application for an Order extending the time by which Google LLC must execute the search warrant:

1.      On January 29, 2021, The Honorable Tony N. Leung issued the attached search warrant authorizing the search of information maintained by Google LLC The search warrant commanded law enforcement to execute the search warrant within 14 days of the issuance of the warrant pursuant to Federal Rule of Criminal Procedure 41—*i.e.*, by February 12, 2021. The Affidavit of Postal Inspector Julie S. Barrows submitted in support of the search warrant sets forth facts regarding an ongoing criminal investigation. The factual allegations in this application are also based on information provided from Postal Inspector Julic S. Barrows.

2.      Production by service providers such as Google LLC pursuant to search warrant routinely occurs outside Rule 41's 14-day period for execution. Indeed, production often occurs more than 30 days after service of a warrant on the service provider. Reasons for delay in production are outside the government's control, and may include the complexity or volume of data requested in the warrant itself, as well

as the volume of other requests for information received by Google LLC

3.      On June 26, 2019, a panel of the Eighth Circuit Court of Appeals issued an opinion in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019). The Eighth Circuit addressed the question of when a warrant issued to Facebook was executed for purposes of Federal Rule of Criminal Procedure 41: "The district court thought the warrant was executed when the officers delivered it to Facebook," while "Nyah counters that the warrant was not executed until the officers seized the evidence from Facebook." *Id.* at 699.   In dicta, the *Nyah* court observed that "the text of Rule 41 suggests that a warrant is not fully executed until officers have seized the property that they are authorized to take" and "the authorized seizure of property under the warrant constitutes part of the execution of the warrant." *Id.* The court, however, concluded that it did not need to "definitively" determine whether the warrant was "executed" within fourteen days after the warrant was issued because even if there were a violation of Rule 41, there was no basis for suppression.  *Nyah*, however, recommends a remedy to any Rule 41 problem, which is to "simply obtain a fresh warrant with a renewed period of fourteen days within which to execute the warrant." *Id.* at 700.

4.      Although *Nyah* does not contain a *holding* that a Rule 41 violation occurs when providers like Facebook produce records in response to a search warrant more than 14 days after the warrant is issued, Judge Colloton's opinion strongly suggests such an interpretation. The United States disagrees with this interpretation, and contends that, as the Sixth Circuit held in *United States v.*

*Farrad*, 895 F.3d 859, 890 & n.23 (6th Cir. 2018), a warrant directed to a service provider is executed when an officer serves it on the provider. *Nyah* also conflicts with the Eighth Circuit's earlier decision in *United States v. Welch*, 811 F.3d 275, 280-81 (8th Cir. 2016). In considering when the time limit for providing notice of a search warrant under Fed. R. Crim. P. 41(f) began to run, the *Welch* court pinned the timing of a warrant's execution to the date when officers served the warrant on the provider (via installation of software on a server). Nevertheless, *Nyah* is the only Eighth Circuit opinion to speak directly to when execution is complete under Rule 41, and therefore the United States seeks to comply with it in an abundance of caution.

5.    Recognizing both the *Nyah* court's suggestion that "execution" of a warrant occurs only after the provider produces the records sought to the law enforcement agent, and that prior experience has shown that production often occurs after the 14-day requirement provided by Rule 41 has lapsed, the government hereby moves for an Order pursuant to Rule 45(b)(1)(A) to extend the period of time for execution "before the originally prescribed or previously extended time expires." Accordingly, the government seeks an Order extending the period by which the

warrant must be executed from 14 days from the issuance of the warrant—February 12, 2021—until the government obtains the records produced by Google LLC in response to the warrant.

Dated: January 29, 2021                    Respectfully submitted,

                                           ERICA H. MacDONALD
                                           United States Attorney

                                           *s/ Joseph H. Thompson*
                              BY:          JOSEPH H. THOMPSON
                                           EMILY A. POLACHK
                                           Assistant U.S. Attorneys

SW_00000102

2020R00187

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 21-mj-97 (TNL)

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH THE
EMAIL ACCOUNTS
IZZYBANKS09@GMAIL.COM AND
JWILSON.NVD@GMAIL.COM THAT ARE
STORED AT PREMISES CONTROLLED BY
GOOGLE LLC

**SEALED BY ORDER OF THE COURT**

ORDER EXTENDING TIME TO
EXECUTE SEARCH WARRANT

The Court has reviewed the Application of the United States for an extension of time to execute the accompanying search warrant. Although the Court does not believe an extension is needed if the government executes the search warrant by serving it on the provider within 14 days of its issuance, *see United States v. Farrad*, 895 F.3d 859, 890 & n.23 (6th Cir. 2018) (stating that a warrant directed to a service provider is executed when an officer serves it on the provider), the Court understands the government's concerns about statements made in dicta in *United States v. Nyah*, 928 F.3d 694 (8th Cir. 2019).

Therefore, the Court finds that the United States has shown good cause for the requested order. The United States must serve the above-captioned Search Warrant on Google LLC within 14 days of issuance. To the extent that "execution" of the Search Warrant under Federal Rule of Criminal Procedure 41(e)(2)(A)(1) includes production of records by Google LLC in response to the Search Warrant, it is ORDERED pursuant to Federal Rule of Criminal Procedure 45(b)(1)(A), that the date by which law enforcement

must execute this warrant is extended from February 12, 2021, to the date the government

obtains the records produced by Google LLC in response to the warrant.

January 29, 2021
Date

_____
The Honorable Tony N. Leung
United States Magistrate Judge

2

SW_00000104