UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-88(2) (ECT/LIB)

United States of America,

Plaintiff,

**DEFENDANT'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION**

vs.

Elizabeth Christine Brown (2),
Defendant.

## Introduction

Defendant, Ms. Elizabeth Christine Brown, by and through her attorneys, Andrew

S. Garvis and Erica E. Davis, and pursuant to Local Rule 72.2(b)(1), makes the following

objections to Magistrate Judge Brisbois' recommendations that Ms. Brown's Motions to

Suppress ECF Nos. 56, 63 be denied. *See* Report and Recommendation, *United States v.*

*Luthor*, ECF 80. (hereinafter R&R).

I. **The Search Warrants for Instagram, Facebook and Email Did Not Satisfy the
   Particularity Requirement and Were Unsupported by Probable Cause**

The Magistrate Judge upheld the Instagram, Facebook, Email search warrants

("Social Media Search Warrants"); recommending that the search warrants were valid.

Specifically, the Magistrate Judge recommended that all the Social Media Search

Warrants satisfied the particularity requirement. The Magistrate Judge also found that the

affidavits submitted in support of the Social Media Search Warrants provided probable

1

cause for sex trafficking and financial fraud. R&R at 32-38. The Magistrate's probable-

cause determination was erroneous.

The Magistrate Judge's recommendation notes that:

> PI Barrows' affidavit submitted in support of the Social Media Search
> Warrants provided a sufficient nexus upon which Magistrate Judge
> Leung and Magistrate Judge Menendez could have reasonably
> concluded that the execution of the Social Media Search Warrants
> would result in a fair probability that evidence of sex trafficking and
> financial fraud would be found on the suspect accounts to be
> searched.

R&R at 36. However, the Social Media Search Warrants lacked any evidence that Mr.

Luthor and Ms. Brown were engaged in sex trafficking in violation of the Mann Act as

argued by the Government. The Mann Act requires some proof that an individual is being

trafficked over state lines for forced prostitution. There was absolutely no evidence that

Ms. Brown nor Mr. Luthor were engaging in such conduct. *See* Defendant Brown's

Memorandum. ECF 74 pp. 2-5.

As noted by Ms. Brown:

> Taken at its best, the information in the application shows nothing more than
> that Mr. Luthor was possibly in a polyamorous relationship with several "of
> age" individuals. Even that is not certain, as nothing is stated that these are his
> "partners," "spouses," or "concubines" outside of alleged innuendo. Moreover,
> no information was put forth that any of the women were so engaged in any sex
> acts. There are no texts or posts related to sex communication, offers of money
> for sex, or even sexual vocabulary by Ms. Brown, Mr. Luthor, or any of the
> other women living with them. Innuendo and supposition persist throughout
> these warrants with the intent, which was put forward by the officer, to
> purposely present facts in a way to create salacious constructs against Ms.
> Brown and Mr. Luthor. There was absolutely no evidence that these two
> trafficked anyone.

*Id*.

Magistrate Brisbois' ruling strains to support his finding of 'fair probability.' First noting

that "PI Barrows also attested that, based on her training and experience, individuals

often use social media platforms, like Instagram and Facebook, to drive traffic to other

sites, gather individuals for a common interest, and/or for marketing purposes." R&R at

36. In other words, somehow that someone using the most ubiquitous social media

platforms in the world demonstrated the need. Some 5.6 billion people use social media

daily, yet the use is somehow evidence of criminal activity. *See* Global Social Media

Statistics — DataReportal – Global Digital Insights

More problematic is the adoption that Burrows Affidavit had 4 'tipsters' that

suspected either sex trafficking or fraud. R&R at 36-37. Just because someone makes a

statement doesn't make them a 'tipster' and as noted by both Mr. Luthor and Ms. Brown,

none of the 'tipster' information amounted to anything but innuendo and supposition. See

Brown Memorandum, ECF 73 p. 4-5.

- J.R.'s rant about being flown to Minnesota and the 'weird' interview;
- The hairdresser's alert about how someone was dictating how a woman's hair should be cut;
- The plumbing inspector's note about the grotto tub and large shower that he had never seen before that he labeled a "gang shower"; and
- Mail pulled at that home where it was shown that antibiotics were prescribed for a common woman's issue.

None of this amounted to any actual evidence that could lead to 'fair probability' of

criminal conduct and honestly could be seen as nothing more than individual bias and

racism in the fact that a black man and white woman were involved with each other.

Magistrate Brisbois, cited "*United States v. Chappell*, No. 09-cr-139, (JNE/JJK), 2010

WL 1131474 (D. Minn. Jan. 12, 2010), report and recommendation adopted, 2010 WL

1131473 (D. Minn. Mar. 22, 2010) for the proposition that "(tipster information that

associated the defendant with women believed to be prostitutes as a factor in establishing

probable cause)." No one made an allegation that the individuals in the home with Mr.

Luthor were prostitutes. We live in a diverse world where the standard "puritan"

association that someone has to be monogamous with one person is absurd and the fact

that someone has multiple relationships and/orsexual partners does not make the woman

prostitutes.  As was specifically argued to Magistrate Brisbois, "t]here was just absolutely

nothing in these "social media warrants" to demonstrate in even the slightest form that

Mr. Luthor and Ms. Brown were engaged in trafficking individuals over state lines for

prostitution." *Id*. at 5.

More disturbing, was that the Social Media Search Warrants also lacked any evidence

of "fraud" and "money laundering." There was no probable cause put forth in the

applications to secure the extensive searches requested that either Ms. Brown or Mr.

Luthor, through Golden Victory Medical, were engaging in any form of fraud.

Magistrate Brisbois stated the Zelle transfers between Ms. Brown and Mr. Luthor

were suspicious. R&R 37. There was no evidence whatsoever that this money was

fraudulent yet Magistrate Brisbois noted "PI Barrows' affidavit noted consistent personal

Zelle transfers of varying amounts between Defendant Luthor and Defendant Brown;

Defendant Brown's cash downpayment of $315,000 on a $1,049,000 home; Defendant

Luthor's purchase of a 2019 Mercedes Benz for approximately $130,000; and paperwork

where Defendant Luthor identified his salary as $999,961 per year" equated to evidence

of financial Fraud. R&R 37-38. That someone how money transfers alone without evidence of where this money came from meant fraud.

We live in world of modern banking, we have Zelle, Venmo, Cash App, PayPal, Google and Apple Pay. Billions of dollars transfer hands throughout the world daily via these mechanisms. Moreover, it is done between spouses, friends, businesses and acquaintances. Nothing was alleged as to Mr. Luthor's and Ms. Brown's financial or employment history or their respective financial assets that would mean that they could not afford the home or the vehicle. It strains credulity that without more this was fair probability of fraud.  ECF 74 p. 6-7.

Ms. Brown continues to strongly argue that there was not sufficient nexus for the Court to grant the Social Media Warrants. There was no evidence on social media that Defendants Luthor and Brown were engaged in any "sex trafficking," "wire fraud," or "money laundering." In the interconnected world in which we live today, that analysis would strip the meaning completely from the Fourth Amendment to show that the place to be searched actually has evidence of crime to be found. *United States v. Johnson*, 848 F.3d 872, 878 (8th Cir. 2017) ("In order to support an application for a search warrant, '[t]here must be evidence of a nexus between the contraband and the place to be searched.'") (quoting *United States v. Colbert*, 828 F.3d 718, 726 (8th Cir. 2016); *see also United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). As further noted in *Johnson*, "[f]actors to consider in determining if a nexus exists include 'the nature of the crime and the reasonable, logical likelihood of finding useful evidence.'") *Id.* (quoting *Colbert*, 828 F.3d at 726); *see also United States v. Etheridge*, 165 F.3d 655, 657 (8th

Cir. 1999)). There just was no probable cause or nexus for any of the social media warrants.

    **II. The search warrants for the home on Welter Way and Golden Victory Medical (GVM) and the 23 Devices seized were derived from the impermissible search warrants for the social media warrants, and when that information is removed, no probable cause existed to support the search warrants.**

    The recommendation by the Magistrate Judge found that the

> the affidavits submitted in support of the Welters Way and GVM Search Warrants satisfied the particularity requirement, established a sufficient nexus between the properties to be searched and the evidence of financial and healthcare fraud to be seized, and would have provided Magistrate Judge Foster and Magistrate Judge Koppe with a substantial basis upon which to conclude that probable cause for financial and healthcare fraud existed to issue the Welters Way and GVM Search Warrants.

R&R at p. 39. The Magistrate Judge based that conclusion on the fact that he had found the Social Media Warrants had satisfied the particularity requirement and that there was a sufficient nexus between the accounts to be searched and the evidence to be seized. *Id.* The Magistrate Judge reasoned: "that Magistrate Judge Foster and Magistrate Judge Koppe had a sufficient basis upon which to believe that probable cause for financial and healthcare fraud existed to support the issuance of the Welters Way and GVM Search Warrants." *Id.*

    Ms. Brown continues to assert that the search warrants for the parties' home on Welter Way and business were obtained by the exploitation of the illegality of the social media warrants, as well as the 23 devices found in the home, and there was no independent source of fair probability that a crime occurred at the home or the business. A violation of the Fourth Amendment usually triggers exclusion of evidence obtained by

6

way of the violation. *United States v. Davis*, 760 F.3d 901, 903 (8th Cir. 2014). "[T]he

exclusionary rule reaches not only primary evidence obtained as a direct result of an

illegal search or seizure, but also evidence later discovered and found to be derivative of

an illegality or fruit of the poisonous tree." *United States v. Hastings*, 685 F.3d 724, 728

(8th Cir.2012) (quoting *United States v. Riesselman*, 646 F.3d 1072, 1078 (8th Cir.

2011)); *see also Murray v. United States*, 487 U.S. 533, 536–37, 108 S.Ct. 2529, 101

L.Ed.2d 472 (1988).

The taint from the illegal Social Media Warrants was not purged such that the

warrants for Welters Way, GVM and the 23 devices could have been lawful. And, if the

Social Media Warrants had not been granted and executed, there never would have been

the subsequent search warrants for the home and business. Also notable was that by the

time of these two search warrants (Welters Way and GVM), two years had passed since

the Social Media Warrants had been executed and the government no longer believed

there was any sex trafficking occurring. Although there was no longer a belief that they

were engaged in such forced trafficking over state lines for prostitution, the warrants still

included information related to the parties and the social media accounts, noting travel

and leisure they took. *Id.*

Beyond the issues with the underlying Social Media Warrant taint, there was no

nexus to search the home in Minnesota and not anywhere near the business in Nevada.

Therefore, Ms. Brown asks this Court to overturn the R&R and make its own

independent analysis concluding that these warrants were also unlawful and the evidence

obtained as a result should be suppressed.

### III.    *Leon* does not save these defective Warrants

Judge Brisbois noted that even if the warrants were defective that *Leon* should save

the day.

> Finally, assuming solely for the sake of argument that any of the affidavits submitted
> in support of the search warrants now at issue were not sufficient to establish probable
> cause for any of the searches, the Court concludes that officers relied in good faith on
> the probable cause determinations of the various neutral and detached Magistrate
> Judges when executing the Instagram, Facebook, Email, Welters Way, GVM, and
> Twenty-Three Device Search Warrants.

R&R at 48.

Magistrate Brisbois' finding that ". . . , the record presently before the Court

shows clearly and plainly that law enforcement relied in good-faith on all of the Search

Warrants issued" and as such the limitations set out in *Leon* should not be applied was

erroneous. *Id*. 48-49. As noted by Ms. Brown:

> In this instance, the seven warrants challenged are not saved by *Leon*, as
> they wholly lacked indicia of probable cause and were derived almost
> exclusively from unsupported conclusory statements related to the lifestyle
> of Mr. Luthor and Ms. Brown, making the reliance by any officer
> unreasonable.

ECF. 74 at 16.

Moreover, as argued by Mr. Luthor and Ms. Brown, the Supreme Court's decision

in *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022) and

and subsequent decisions of the Supreme Court since Dobbs cast doubt on the judicially

created *Leon* exception. ECF 74 p. 17-18. Ms. Brown noted that Leon, like other crafted

judicial rules runs afoul of the 4th Amendment:

*Dobbs* is just one in a string of recent decisions wherein the Supreme Court has "adopted a 'history and tradition' test in a variety of constitutional contexts, breaking from its own history where its precedent diverged from that interpretive method." *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96, 117 (3d Cir. 2023), *cert. granted*, *judgment vacated sub nom. Garland v. Range*, 144 S. Ct. 2706, 219 L. Ed. 2d 1313 (2024); *see also, e.g., Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) (interpreting the Free Exercise clause and overruling *Lemon v. Kurtzman*, 403 U.S. 602 (1971); *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) (explaining Article III standing); *Am. Legion v. Am. Humanist Ass'n*, 588 U.S. 129 (2019) (interpreting the Establishment clause); *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) (no historical analogues existed to restrict law abiding citizens from carrying a firearm in public); *United States v. Rahimi*, 602 U.S. 680 (2024) (historical analogues existed to disarm those at the time of foundation to allow firearm restriction for someone subjected to a domestic restraining order)

*Id.*

 *Dobbs* and the subsequent cases demonstrate that judicially crafted exceptions made hundreds of years after the adoption of the Constitution and Bill of Rights do not satisfy the historical tradition test that is now in place. At the time of the United States was founded as a constitutional Republic there was no "exceptions" to 4th Amendments' mandates. As noted by Mr. Luthor's attorney in his Memorandum challenging the various search warrants:

> The *Leon* good faith exception is something defined by the supreme court and is not included in the constitution. *Dobbs* changed this. *Dobbs* is clear that if it is not in the constitution, and it is not deeply rooted in our history, it does not matter what precedent the supreme court has set.  The "good faith" exception is not "deeply rooted" and is a judge made exception to a constitutional mandate. . .

ECF 72. p. 32

 As further noted by Mr. Luthor's counsel the rights embodied in the 4th Amendment were derived from experiences at common law in England and the impermissible searches conducted by the Kings men. See, *Boyd v. United States*, 116

U.S. 616 (1886)(the core of the Fourth Amendments is the right to retreat into ones' own home and there be free from unreasonable governmental intrusion). " *Boyd* looked at precedent form England and based on that precedent explained:

> The principles laid down in this opinion affect the very essence of constitutional liberty and security. They reach farther than the concrete form of the case then before the court, with its adventitious circumstances; they apply to all invasions on the part of the government and its employees of the sanctity of a man's home and the privacies of life. It is not the breaking of his doors and the rummaging of his drawers that constitutes the essence of the offense; but it is the invasion of his indefeasible right of personal security, personal liberty, and private property, where that right has never been forfeited by his conviction of some public offense, it is the invasion of this sacred right which underlies and constitutes the essence of Lord Camden's judgment.

*Boyd* at 630.

*Dobbs* and the subsequent cases noted above require the Court to find that the *Leon* abrogation of the 4th Amendment be revoked.

### Conclusion

Ms. Brown respectfully requests that the Court overturn the Magistrate's ruling and suppress the evidence obtained as a result of the Social Media Search Warrants, Welters Way and Golden Victory Medical Search Warrants, as well as the search warrants for the 23 devices as law enforcement did not have probable cause to do so, the warrants were invalid. Further, finding the judicially crafted *Leon* 'good faith' exception does not apply and or has been abrogated by *Dobbs*.

Respectfully submitted,

**KOCH & GARVIS, LLC**

Dated: <u>January 20, 2026</u>

<u>s/ *Andrew S. Garvis*</u>
Andrew S. Garvis, Att'y #257989
Attorney for Defendant
3109 Hennepin Avenue South
Minneapolis, Minnesota 55408
612-827-8101
<u>andrew@uptownlawyer.com</u>

<u>/s/ Erica E. Davis</u>
Attorney for Defendant
Attorney License Number 0393610
3109 Hennepin Ave
Minneapolis, MN 55408
Phone: 612-351-2155
Fax: 612-217-1366
Erica@davisandegberg.com