UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-88 (ECT/LIB)

United States of America,

                 Plaintiff,          **JOINT MOTION TO DISQUALIFY UNDER 28 U.S.C. §455(a)**

vs.

Gabriel Adam Alexander Luthor (1),
Elizabeth Christine Brown (2),

                 Defendants.

Come now, Defendants, Gabriel Adam Alexander Luthor and Elizabeth Christine Brown, by and through their attorneys Thomas C. Plunkett and Andrew S. Garvis and Erica Davis, respectively, who respectfully move the Court for an Order to disqualify Judge Eric Tostrud under 28 U.S.C. §455(a).

    I.      Background:

Gabriel Luthor and Elizabeth Brown are charged with six counts of Wire Fraud in violation of 18 U.S.C. §1343; and, one count of Money Laundering in violation of 18 U.S.C. §1957. [Docket 1, *Indictment*]

Mr. Luthor and Ms. Brown co-owned Golden Victory Medical (GVM) which was a small medical services provider that operated in several states with a general focus on family practice but provided comprehensive holistic medical care for those in need. Many of their patients were Medicaid and Medicare recipients.

1

Payment for providers services was done through billing 'codes' for reasonably medically necessary services. The claim is that GVM was overbilling by combining codes.

The Indictment alleges that that in January 2022, CMS, the company that oversees payments for Medicare/Medicaid, provided a Notice of Suspension ("Notice") for GVM. The Notice alleged that GVM submitted claims to Medicare for services that were medically unnecessary and/or not rendered, and claims for telehealth services that were not medically necessary.

In 2021 GVM retained the services of B.S. to serve as their CEO. In the spring of 2022, GVM undertook an internal audit. After the audit B.S. was fired from GVM. Subsequently B.S. brought a civil lawsuit claiming: erroneous termination retaliation under the False Claims Act and breach of contract. See, 22-cv-2145 (ECT/LIB), *Opinion and Order*. [Docket 62] In response GVM filed an Answer and Countercomplaint. GVM asserted that B.S was fired for creating a hostile work environment and was surreptitiously attempting to take GVM away from Luthor and Brown. *Id*. at 9. In June of 2023, approximately one year into the lawsuit, GVM's lawyer made a Motion to Withdraw as Counsel which this Court granted. *Id*. at 30, 40. This left GVM without counsel when B.S. moved for default Judgement. *Id*. at 49. This Court granted the Motion for Default Judgment and issued an Opinion and Order. *Id*. at 62.

In the Opinion and Order this Court ruled in favor of B.S. making findings in support of B.S. and against GVM.  Those findings go to the heart of the instant

criminal case.  In particular, this Court found that GVM engaged in 'fraudulent' billing and fired B.S. for whistleblowing under the False Claims Act and for Breach of Contract. *Id*. This Court then awarded B.S. hundreds of thousands of dollars in damages. *Id*. Further, this Court made specific findings as to B.S.'s credibility and the emotional havoc B.S. experienced as a result of GVM's Conduct. *Id*. at 20.

The Government's Indictment was originally returned March 6, 2025, and assigned to Judge Paul A. Magnuson and Magistrate Elizabeth Cowan Wright. [Docket 1, *Indictment*] On April 21, 2025 the case was reassigned to Judge Eric Tostrud and Magistrate Leo Brisbois. [Docket 13, *Reassignment Order*] The reassignment was done by the clerk nunc pro tunc to March 6, 2025. The basis for the reassignment was 'related cases' pursuant to 28 U.S.C. Appendix to Federal Claims Rule 40.2.[1]

II.     Legal Standard:

Disqualification of a judge is generally handled under 28 U.S.C. §455.[2] Under §455(a), any justice, judge, or magistrate judge of the United States shall

---

[1] The issue of possible disqualification was raised first at the status conference on April 16, 2026. This was not raised prior as the Court was not required to rule on any Motion of the Defendant related to the possible previous case or testimony of B.S. Subsequently, prior to filing this Motion, counsel for Mr. Luthor and Ms. Brown met and conferred with counsel for the United States in a good-faith effort to resolve the issues raised by the motion, D. Minn. L.R. 7.1(a)(1)(A).

[2] Mr. Luthor and Ms. Brown are not claiming actual bias or prejudice against them pursuant as a basis for disqualification. See, 28 U.S.C. §144 disqualification for *actual* bias or prejudice. See also, CFR 29 2200.68.

disqualify himself in any proceeding in which his impartiality *might reasonably* be questioned. (emphasis added). Under §455(b), disqualification is necessary for *actual* partiality. (emphasis added). In other words, personal bias or prejudice towards a party. See, *United States v. Aldridge*, 561 F.3d 759, 764–65 (8th Cir. 2009)("A federal judge shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a)"). Whether this Court must recuse itself is "within the sound discretion of the district court, and that decision is reviewed for an abuse of discretion." *Id*. citing *In re Kansas Pub. Employees Retirement Sys.,* 85 F.3d 1353, 1358 (8th Cir.1996). Under §455(a) judges should apply an objective standard in determining whether to disqualify. See, *Little Rock Sch. Dist. v. Arkansas*, 902 F.2d 1289, 1290 (8th Cir. 1990). Ultimately, the test for recusal is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all of the relevant facts of a case." *Aldridge*, 571 F.3d 765; *citing Moran v. Clarke,* 296 F.3d 638, 648 (8th Cir.2002) (en banc); *accord United States v. Jordan,* 49 F.3d 152, 156 (5th Cir.1995) (considering how the facts would appear to a "well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person"); *Clemens v. United States Dist. Court for the Central Dist. of California,* 428 F.3d 1175, 1178 (9th Cir.2005) (same); *Matter of Mason,* 916 F.2d 384, 386 (7th Cir.1990) (same).

Disqualification of a judge for bias is seldom appropriate unless the bias derives from an "extrajudicial source." *United States v. Darden,* 70 F.3d 1507,

4

1536 (8th Cir.1995). Absent this, the record must evince a "deep-seated favoritism or antagonism [on the part of the judge] that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). "Motions for recusal under 28 U.S.C. § 455 'will not be considered unless timely made.'" *Tri-State Fin.*, 525 F.3d at 653 (quoting *Fletcher v. Conoco Pipe Line Co.*, 323 F.3d 661, 664 (8th Cir. 2003)).

III.    Analysis:

Here, the Court was 're-assigned' the criminal case based upon the policy of related cases. *See*, U.S.C. Appendix to Federal Claims Rule 40.2. At trial one of the main witnesses for the government will be B.S. the former CEO of GVM. Defendants anticipate that he will testify related to GVM similarly to that as set out in the Court's findings in the *Opinion and Order*. See Docket. 62. In the *Opinion and Order*, This Court made the following findings:

1. B.S., a nationally recognized expert in the field of health services management, was hired as the first Chief Executive Officer of Golden Victory;

2. After starting as Golden Victory's CEO, B.S. quickly recognized flaws in the coding and billing processes at the organization's clinics;

3. In February 2022, he authorized Golden Victory's general counsel to hire an independent third party to conduct a systematic audit of the organization's coding and billing processes;

4. Luthor, Brown, and their personal attorneys had engaged with the government agencies for three months without informing B.S. about the inquiries;

5. On April 28, 2022, the third-party auditor presented an executive summary of the audit's results to B.S. The audit found sweeping errors, including: "coding and billing accuracy levels . . . in the 32.44% range, in comparison with an industry gold standard of 95%," inadequate documentation to support coding assignments, "frequent errors in the coding process for neurofeedback, and incorrect documentation of time increments,".

6. The report also found clinics incorrectly coded nonphysician-provider services as physician services (allowing for a higher reimbursement rate), and misused the "incident-to" standard, a rule that allows nonphysician providers to bill at a higher rate when the initial patient visit is performed by a supervising physician;

7. B.S. recognized that these errors put Golden Victory at risk of civil and criminal liability, "and strongly communicated these risks in [a] May 4 virtual call with the ownership;"

8. He proposed an "aggressive remediation strategy, including a potential pause in billing activity until immediate corrective action could be put in place;

9. "Luthor and Brown stunned B.S. with their lack of concern.";

10. The owners also "rejected the idea of a billing pause as too costly.";

11. Undeterred, B.S. developed a "comprehensive strategy" to mitigate the compliance issues;

12. He directed the executive leadership team to draft a remediation plan and gave clinical staff a companywide briefing in a conference call on May 9;

13. B.S. formally recommended to Luthor and Brown that Golden Victory terminate its relationship with its third-party billing company, but Luthor rejected this idea;

14. While B.S. sought to mitigate the widespread billing irregularities, Golden Victory's director of operations reported Stewart's remediation efforts to Luthor and Brown.

15. On a June 1, 2022 Zoom call, Brown told B.S. that he was being terminated immediately, citing allegations of "racism and sexism" and claiming B.S. had falsified timekeeping records;

[Docket 62, *Opinion and Order* p. 2-5]

This Court then made the follow *credibility* findings related to the False

Claims Act charge:

> *Stewart engaged in lawful acts to stop Golden Victory's overbilling practices* by authorizing an independent third party to conduct an audit, proposing a pause in billing activity, recommending the owners terminate Golden Victory's third-party billing company, and directing the executive leadership team to draft a remediation plan. And *Stewart's subjective belief that Golden Victory was defrauding the government was objectively reasonable*, given pending government inquiries into Golden Victory's billing practices and a

6

54-page independent report finding systematic billing and coding errors.

*Id*. at 8. (emphasis added).

Stewart presented the results of the third-party audit to Luthor and Brown on a virtual call. *During that presentation, he strongly communicated the risks of civil and criminal liability*. The IRS and CMS inquiries also put the owners on notice that their billing practices exposed them to liability. *And not only did Stewart inform the owners directly about his ongoing remediation efforts, but a different member of the executive leadership team also reported this same information to the owners.*

*Id*. p. 12. (emphasis added).

Because Brown and Luthor terminated Stewart shortly after his efforts to stop widespread billing irregularities, rejected Stewart's proposals to pause billing and terminate Golden Victory's third-party billing company, and halted Stewart's remediation initiatives after terminating him, the taken-as-true allegations satisfy causation. *And Stewart adequately alleges that Golden Victory's stated reasons for termination—accusations of workplace misconduct—were pretextual*

*Id*. at 13. (emphasis added).

As to the Breach of Contact the Court then made the following credibility determinations:

*The taken-as-true allegations describe a termination without cause. Golden Victory fired Stewart relying on the pretext of misconduct*

*Id*. at 14. (emphasis added).

Because *Golden Victory did not have a valid reason to terminate* Stewart under the Agreement *and its stated reasons for termination were pretextual*, Stewart's termination is best categorized as termination without cause under § 14(c).

*Id*. at 14-15. (emphasis added).

These findings and the ultimate granting of money damages to B.S. goes directly to issues that will be presented in the criminal case related to Golden Victory Medical and whether Mr. Luthor and Ms. Brown intentionally defrauded the Government. The issue of B.S.'s credibility, which this Court has ruled on, will be an issue of dispute during this trial.

CONCLUSION

For the foregoing reasons Mr. Luthor and Ms. Brown request that the Court recuse itself.

Dated: May 4, 2026                         Respectfully submitted,


  *s/Thomas C. Plunkett*
Thomas C. Plunkett, Att'y #260162
Attorney at Law
332 Minnesota Street
Suite W1610
St. Paul, MN 55101
tcplunkett@tp4justice.com
Attorney for Defendant Luthor

s/ *Andrew S. Garvis*
Andrew S. Garvis, Att'y #257989
Koch and Garvis, LLC
3109 Hennepin Avenue South
Minneapolis, MN 55408
612-827-8101
 andrew@uptownlawyer.com


s/ *Erica E. Davis*
  Attorney for Defendant
Attorney License Number 0393610
3109 Hennepin Ave
Minneapolis, MN 55408

8

Phone: 612-351-2155
Fax: 612-217-1366
Erica@davisandegberg.com
Attorneys for Defendant Brown