**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
*Criminal No.: 25-CR-88 (1) (ECT/LIB)*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>Vs.<br><br>GABRIEL ADAM ALEXANDER LUTHOR,<br><br><br>Defendants. | **DEFENDANT GABRIEL LUTHOR'S MOTION IN LIMINE REGARDING GOVERNMENT EXHIBITS 16(a) THROUGH 16(cccc)** |

Defendant Gabriel Adam Alexander Luthor, through counsel, moves in limine for an order regarding the government's proposed Exhibits 16(a) through 16(cccc), a series of 100 exhibits drawn from Ms. Brown's cell phone.

## INTRODUCTION

The government's exhibit list describes the Exhibit 16 series as texts between Ms. Brown and the telephone number 507-363-2563, which Ms. Brown's address book labels "Gabriel Luthor."[1] The series is not what that description suggests. Eighty-six of the exhibits are excerpts from a single iMessage thread on Ms. Brown's phone. The other fourteen are images with no extraction data at all, and at

[1] The government's exhibit list describes these exhibits as "texts between Elizabeth and 507-363-2563 ('Gabriel Luthor')," placing the name in quotation marks. (ECF No. 150 at 5.)

least five of them, the exhibits the government will offer on Count 7, are not communications with Mr. Luthor. They are Ms. Brown's own exchanges with a third party in Africa about the drilling venture.

The authorship question is not academic. The government has also extracted the iPhone it attributes to Mr. Luthor, which is associated with 507-363-2563. Counsel for Mr. Luthor has reviewed that extraction. The messages in Exhibit 16(u), which the government has titled "Donielle Freedman script" and which it will apparently offer to show that Mr. Luthor wrote Ms. Brown's response to a nursing board complaint, do not appear on the phone the government attributes to Mr. Luthor. Exhibit 16(u) is merely and example of the many texts which do not appear on the phone. Exhibit 16(u) is also interesting as it discusses Mr. Luthor in the third person, suggesting someone else is using the phone, not Mr. Luthor.

Mr. Luthor does not ask the Court to exclude the series wholesale. He asks for four things. First, a pretrial proffer of the evidence on which the government will rely to prove that Mr. Luthor wrote the messages it attributes to him, because the government's Rule 902(14) certification proves only that the data was accurately copied from Ms. Brown's phone, together with an order excluding Exhibit 16(u) and each of the 100 exhibits not found on the phone attributed to Mr. Luthor, unless the government establishes its authorship at a hearing outside the jury's presence. Second, a ruling that the Count 7 exhibits may not be presented as

communications with Mr. Luthor, that their foundation be laid, and that they be received with appropriate limiting instructions. Third, an order limiting the series under Rule 403 and replacing the government's argumentative exhibit titles with neutral ones. Fourth, an order under Rule 106 permitting Mr. Luthor to complete any excerpt from the thread at the time it is offered.

## BACKGROUND

### A. The Thread Exhibits

Law enforcement extracted Ms. Brown's iPhone. The extraction is labeled a "partial" extraction.[2] For eighty-six of the Exhibit 16 exhibits, the government has produced an extraction report listing each message in the excerpt, its date and time, and its source in the phone's iMessage database (sms.db). Each message received from the other party is attributed to "Gabriel Luthor (+15073632563)." That name comes from Ms. Brown's own address book (AddressBook.sqlitedb), which the extraction software joined to the phone number. It is not a carrier record or an Apple account record, and it does not identify who was typing.

The excerpts run from November 16, 2019, to December 13, 2022. They range from two messages to more than seventy. The government chose where each

[2] The extraction file is named "00008120-001854C00240C01E_files_partial-afu.zip." The examiner's Rule 902(14) certificate, by contrast, states that he "conducted a full file system extraction." (Peterson Certificate ¶ 3.) The government has not explained the discrepancy, disclosed what data was not recovered, or stated whether the portions of the thread it did not designate are complete.

excerpt begins and ends. Many are personal. Exhibit 16(c), titled "Gabe pushing on numbers," opens with Ms. Brown asking "So what came first the movie or us," followed by "Good I love you," "Miss u , miss joking w you," and "Same love." Exhibit 16(mm), titled "do exactly as I say," opens with "missing you babe" and "Miss you to." The government has given each exhibit a descriptive title on its exhibit list. Many titles take the most provocative phrase in the excerpt and attribute it to "Gabe."[3]

**B. Exhibit 16(u) and the Extraction of the Phone the Government Attributes to Mr. Luthor**

Exhibit 16(u) is an excerpt of eleven messages from February 10, 2020. Seven are attributed to "Gabriel Luthor (+15073632563)." The first, received at 1:08 p.m., is a long message written in the first person by a practitioner who had left Dr. Donielle Freedman's practice. It states that Dr. Freedman "and her staff has been obsessed since I left them," that she "[r]efused to pay last paycheck," and that "[s]everal of these patients are still with me." Later messages that evening refer to "Gabriel" in the third person: "Tell her Gabriel has sued and won against huge

[3] Examples include "Gabe will impose his will" (16(kk)), "stop texting and obey" (16(h)), "Gabe needs private jet" (16(vv)), "everyone will do as I" (16(cccc)), "find the money" (16(w)), and "if you are god I better be yo" (16(yyy)). The underlying message in 16(kk) reads "I will impose my will," and the one in 16(vv) reads "I need a jet this isn't working." The titles recast those messages in the third person as statements by "Gabe."

companies," "This isn't a big deal Gabriel's legal is already dealing with it," and "The problem is Gabriel said smooth transition and this isn't."

At 3:09 p.m. that day, Ms. Brown emailed a response to a complaint Dr. Freedman had filed with the Nevada State Board of Nursing. (GJS_00012664–67.) Portions of the response track the 1:08 p.m. message. The government's title for the exhibit, "Donielle Freedman script," signals that it will offer Exhibit 16(u) to show that Mr. Luthor wrote Ms. Brown's response.

Law enforcement seized an Apple iPhone from a chair in the foyer of the Eden Prairie residence on January 12, 2023, and extracted it on September 1, 2023. (Quesenberry Certificate ¶¶ 2–3. NRPT_00000079, 101–03.) The government attributes that phone to Mr. Luthor. Its extraction lists the Apple ID krushstyles1@gmail.com and identifies the phone's own number as 15073632563, the same number Ms. Brown's address book labels "Gabriel Luthor." (NRPT_00000102. Gov't Ex. 31, Report at 12.)[4] The government has certified this extraction under Rule 902(14) and lists exhibits drawn from it. (ECF No. 150 at 16–17 (Exs. 30–32).)

[4] The examiner's own records describe the device inconsistently, as an "iPhone 13 Pro Max" in his supplemental report and as an "iPhone 14" in his forensic report and certificate, and the phone was identified as Mr. Luthor's at the scene by unidentified "[o]fficers from the search warrant execution team." (NRPT_00000079–103.) Mr. Luthor does not ask the Court to resolve those questions now. The point here is narrower. Whatever its provenance, this is the device the government itself attributes to Mr. Luthor and to 507-363-2563.

Counsel for Mr. Luthor reviewed the government's extraction of that phone, confirmed that it is associated with 507-363-2563, and searched it for the messages in Exhibit 16(u). They do not appear in it. The government has not designated any message from the extraction of that phone that corresponds to any message in the Exhibit 16 series at this point. The government is the proponent of all 100 exhibits in exhibits 16, the proponent must produce evidence "sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901.

**C. The Image Exhibits, Including the Count 7 Exhibits**

Fourteen exhibits in the series, 16(b), (y), (z), (pp), (qq), (rr), (uu), (xx), (ccc), (eee), (fff), (iii), (jjj), and (kkk), are images without any extraction record. Nothing produced with them identifies where on Ms. Brown's phone each image was found, when it was created, or whether it was ever sent to anyone. For some, a separate thread exhibit shows Ms. Brown sending an image to 507-363-2563 on the same date. For others, including every exhibit relating to Count 7, there is no such record among the exhibits the government has designated.

Count 7 charges both Defendants with a violation of 18 U.S.C. § 1957 based on "the wire transfer of $400,000" on or about May 10, 2022. (Indictment ¶ 74.) The government alleges that the money was "sent overseas to fund a drilling-truck

investment in Zambia and the Democratic Republic of the Congo." (ECF No. 149 at 18.)[5] Five exhibits relate to that venture:

| | |
|---|---|
| 16(eee) | An April 27, 2022, email to "Liz" from "Elly" reporting on meetings in Lubumbashi, which begins "See the updates below to share with Gabriel." It is addressed to Ms. Brown, not to Mr. Luthor. |
| 16(fff) | A May 10, 2022, screenshot of a chat between Ms. Brown ("You") and a contact labeled "Elly New Number" about two drilling machines priced at $170,000 and $150,000. |
| 16(iii) | A May 17, 2022, photograph of a truck, with no text and no indication of sender or recipient. |
| 16(jjj) | A June 18, 2022, screenshot of a chat with a Zambian telephone number (+260 97 2769180) giving a drilling update. |
| 16(kkk) | A June 24, 2022, screenshot of a chat between Ms. Brown ("You") and a contact labeled "Elly Simatendele Terry," which states that Elly wanted "to tell Gabriel what my strategy was" but could not. |

None of these is a message between Ms. Brown and 507-363-2563. The chat screens in 16(fff), 16(jjj), and 16(kkk) display "online" and "last seen" indicators, which do not appear to be features of the iMessage interface used in the thread exhibits. Among the thread exhibits, the earliest message attributed to Mr. Luthor that mentions Elly, a truck, or "Africa" is dated July 23, 2022, more than two months after the charged transaction. (Gov't Exs. 16(ooo), 16(rrr), 16(sss).)

[5] The government's trial brief states that "Brown and Luthor" transferred the $400,000. (ECF No. 149 at 18.) The Indictment alleges that "Brown transferred" it. (Indictment ¶ 55.)

## ARGUMENT

### I. The Government Should Be Required to Proffer, Before Trial, the Evidence That Mr. Luthor Authored the Messages It Attributes to Him

The proponent of an item of evidence "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Where, as here, the relevance of a message depends on who wrote it, authorship is a preliminary question of conditional relevance, and the Court must decide whether the jury could reasonably find it by a preponderance of the evidence. Fed. R. Evid. 104(b). *See Huddleston v. United States*, 485 U.S. 681, 690 (1988).

The government has given notice that it will offer the extraction of Ms. Brown's phone without a sponsoring witness, by a certification under Rule 902(14). (ECF No. 149 at 30–31.) A Rule 902(14) certification establishes that data was accurately copied from a device. It does not establish who put the data there. The Advisory Committee said so directly: a certification "can only establish that the proffered item is authentic," and a defendant "can still challenge whether the information on the hard drive was placed there by the defendant." Fed. R. Evid. 902(14) advisory committee's note to 2017 amendment. The note to the companion rule gives the example of a defamation plaintiff who authenticates a webpage by certification, after which the defendant "remains free to object that the statement

on the webpage was not placed there by defendant." Fed. R. Evid. 902(13) advisory committee's note to 2017 amendment. The government's own trial brief acknowledges that the defense "may still object to the relevance and/or admissibility of the content of the extraction." (ECF No. 149 at 31.)

Courts have refused to let a certification, or the name on an account, stand in for proof of authorship. In *United States v. Browne*, 834 F.3d 403, 415 (3d Cir. 2016) citing (*United States v. Vayner*, 769 F.3d 125, 131 (2d Cir. 2014)), the Third Circuit rejected the government's argument that Facebook chats were self-authenticating under Rule 902(11) and required the government to prove authorship under Rule 901 with extrinsic evidence linking the defendant to the chats. In *United States v. Vayner*, 769 F.3d 125 (2d Cir. 2014), the Second Circuit vacated a conviction because the government offered no evidence that the defendant himself created a social media page bearing his name and photograph. The Eighth Circuit has upheld authentication of electronic communications where the government tied the account to the defendant through independent evidence, such as an email address, IP address, and internet service account associated with him. *United States v. Perez*, 61 F.4th 623, 627 (8th Cir. 2023). The common thread is that the proponent must show who wrote the message, not just whose name is attached to it.

On the face of the Exhibit 16 series, the only link between these messages and Mr. Luthor is a contact label in Ms. Brown's own address book. The government may offer subscriber records and Apple account information to show that 507-363-2563 was associated with an account in Mr. Luthor's name. That evidence would show whose account it was. It would not show who typed a particular message. An iMessage is sent through an Apple ID, and messages can be sent from any device signed into that account, including a tablet or computer. Ms. Brown, a co-defendant, cannot be compelled to testify that the person on the other end was Mr. Luthor.

*Exhibit 16(u).* By way of example, the government's own evidence points the other way. The government has extracted the phone it attributes to Mr. Luthor, the phone associated with 507-363-2563, and the messages in Exhibit 16(u) are not on it. If Mr. Luthor had sent those messages from that phone, the most direct corroboration of authorship would be the sent messages themselves, and they are absent. In deciding a question of conditional relevance under Rule 104(b), the Court "examines all the evidence in the case." *Huddleston*, 485 U.S. at 690. That evidence includes the government's extraction of the device it attributes to Mr. Luthor. This issue is not limited to Exhibit 16(u).

The absence of the messages may have an explanation. The messages may have been sent from some other device signed into the account, they may have

been deleted, or they may not have carried over to a phone that the examiner's certificate identifies as an iPhone 14, a model released after February 2020. Each explanation, however, requires evidence the government has not offered, and the first of them is itself a reason to doubt attribution. A message sent from a computer or tablet signed into an account is a message from whoever was using that device. Notably, Ms. Brown's phone is also an iPhone 14 model, and the government's extraction of it does contain these February 2020 messages. (Peterson Certificate ¶ 2.) The content of the exhibit does not resolve the question either. The 1:08 p.m. message is written in the voice of a practitioner who "left" Dr. Freedman's practice and whose patients "are still with me." Mr. Luthor was not that practitioner. Other messages also speak of "Gabriel" in the third person.

Exhibit 16(u) and all messages with similar issues should therefore be excluded unless, at a hearing outside the jury's presence, the government produces evidence sufficient to support a finding that Mr. Luthor authored the messages attributed to him. Fed. R. Evid. 104(b), (c), 901(a). That showing matters beyond this one exhibit. The government is in the best position to determine, for every message it attributes to Mr. Luthor, whether a corresponding message appears in the extraction of the phone it says is his. Mr. Luthor asks that the government be required to make that comparison and disclose the result as part of the proffer requested in Part V.

As to the series generally, the government may have evidence of authorship beyond the address-book label. If so, it should be required to identify it before trial, so the Court can make the Rule 104(b) determination outside the jury's presence, Fed. R. Evid. 104(c), and so that the jury does not see a hundred exhibits captioned with Mr. Luthor's name before the foundation is laid. If the government's only basis is the address-book label on Ms. Brown's phone, the messages attributed to Mr. Luthor should not be received against him.

## II. The Count 7 Exhibits May Not Be Presented as Communications with Mr. Luthor and Should Be Received, If at All, Only on a Proper Foundation and with Limiting Instructions

Mr. Luthor has not disputed that "the government may attempt to trace money allegedly laundered as charged in [the] Indictment." (ECF No. 156 at 3.) The drilling venture is relevant to that count. But relevance to Count 7 does not answer the separate questions of what these five exhibits are, whose statements they contain, and against whom they may be used.

*Foundation and description.* The five Count 7 exhibits are filed in a series the government describes as texts between Ms. Brown and "Gabriel Luthor." They are not. Exhibit 16(eee) is a message to Ms. Brown. Exhibits 16(fff), 16(jjj), and 16(kkk) are screenshots of Ms. Brown's chats with Elly or a Zambian number on what appears to be a different messaging application. Exhibit 16(iii) is a photograph. None carries an extraction record showing where it was found on the phone or

that it was ever sent to Mr. Luthor. A Rule 902(14) certification covering the phone as a whole does not tell the jury where these images came from or what they are. The government should be required to lay that foundation, and the exhibits should be removed from the Exhibit 16 series or redescribed so that they are not presented to the jury as communications with Mr. Luthor. The same is true of the other image exhibits listed above, unless the government identifies a record showing that each was sent within the thread.

*Hearsay.* The statements of Elly and the Zambian correspondent are out-of-court statements of non-parties. To the extent the government offers them for their truth, for example to prove what machines were purchased, at what price, or for what purpose, they are hearsay. Fed. R. Evid. 801(c), 802. Elly is not among the declarants the government has identified as coconspirators (ECF No. 155), and no statement may be received under Rule 801(d)(2)(E) without the findings *Bourjaily v. United States*, 483 U.S. 171, 175 (1987), requires. If the government offers these statements for some purpose other than their truth, Mr. Luthor requests an instruction limiting them to that purpose. Fed. R. Evid. 105.

*Statements admissible against one Defendant only.* The statements of Ms. Brown in these exhibits, marked "You," are her own statements and may be offered against her. Fed. R. Evid. 801(d)(2)(A). They are not Mr. Luthor's statements, and absent the findings required by Rule 801(d)(2)(E), they may not be used against

him. On timely request, the Court "must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. Mr. Luthor requests that instruction for each Count 7 exhibit that is received.

*Uncharged conduct.* Exhibit 16(eee) reports a suggestion that a backlog of trucks at the border could be avoided by "using the people working at the border," which "will however come at an additional cost," and refers to a meeting with "the Minister of mines." Neither Defendant is charged with any offense concerning those matters, and nothing in the exhibit shows that anyone acted on the suggestion. The passage adds nothing to proof of a $400,000 domestic wire transfer, and it invites the jury to speculate that the venture involved improper payments to foreign officials. That passage should be redacted. Fed. R. Evid. 403, 404(b).

*Timing.* Section 1957 requires proof that the defendant knowingly engaged in the charged monetary transaction knowing it involved criminally derived property. (ECF No. 149 at 2.) The charged transaction occurred on or about May 10, 2022. The messages attributed to Mr. Luthor that mention the venture were sent in July and August 2022. Mr. Luthor reserves his objections to the use of those later messages to prove his knowledge or participation as of May 10, and asks that the government identify, in the proffer requested below, which exhibits it offers on Count 7 and for what purpose.

## III. The Court Should Limit the Series Under Rule 403 and Order Neutral Exhibit Titles

The Court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997) (quoting Fed. R. Evid. 403 advisory committee's note).

*Cumulative evidence.* One hundred exhibits from one source, many making the same point, will consume trial time out of proportion to their value. The government should be required to identify, before trial, the exhibits it will actually offer and, for each, the specific messages it relies on and the issue to which they are directed. Exhibits that duplicate others should be excluded.

*Personal and relationship content.* Many excerpts consist largely of endearments, quarrels, and apologies between two people in a relationship. Those passages do not tend to show who chose a billing code, what any claim said, or what either Defendant knew about its accuracy. Their effect is to invite the jury to infer that because Mr. Luthor was demanding in the relationship, he must have

controlled the billing. That is the improper basis Rule 403 guards against.[6] Where an exhibit contains a business statement embedded in personal exchanges, the personal exchanges should be redacted unless they are needed to understand the business statement.

*Exhibit titles.* Titles such as "Gabe will impose his will," "stop texting and obey," and "Gabe needs private jet" are argument. They select a phrase, recast it, and attribute it to Mr. Luthor by name, which assumes the answer to the authorship question the jury must decide. If they appear on exhibit stickers, in an exhibit index, in a summary witness's testimony, or on a screen in the courtroom, they will tell the jury what to conclude before it reads the messages. The Court should order that each exhibit in the series be identified to the jury only by its exhibit number and date. Since the jury will view exhibits on a computer, the titles of exhibits must be adjusted.

## IV. Under Rule 106, Mr. Luthor Is Entitled to Complete Any Excerpt at the Time It Is Offered

"If a party introduces all or part of a statement, an adverse party may require the introduction, at that time, of any other part, or any other statement, that in

[6] Mr. Luthor has opposed the government's motion to admit evidence of his "control and power" over Ms. Brown and others, including the "god," "goddess," and "Nike" material. (ECF No. 156.) This Court has yet to issue an order. This motion does not repeat those arguments, but asks the Court to apply its ruling exhibit by exhibit to the Exhibit 16 series before any of it is shown to the jury.

fairness ought to be considered at the same time. The adverse party may do so over a hearsay objection." Fed. R. Evid. 106. The rule addresses "the misleading impression created by taking matters out of context." Fed. R. Evid. 106 advisory committee's note to proposed rules. As amended in 2023, the rule makes clear that a party who presents a distorted excerpt "can fairly be said to have forfeited its right to object on hearsay grounds" to the completing material. Fed. R. Evid. 106 advisory committee's note to 2023 amendment.

Each thread exhibit is a fragment of a continuous conversation. The extraction reports for those exhibits refer to a full "Chat preview report" of the thread generated by the extraction software. A message that reads as a directive may answer a question the excerpt omits. A message that reads as a concession may be followed by a correction the excerpt cuts off. Exhibit 16(aaaa) illustrates the point from the other direction. In it, the person the government identifies as Mr. Luthor tells Ms. Brown, "We cannot try to submit around it or it could have real issues," and "You think you are the first to think of this with the hundreds of cases upic does a year." The jury should evaluate any excerpt with its surrounding context.

Mr. Luthor requests an order (1) directing the government, to the extent it has not already done so, to produce the complete extraction of the thread, including the chat preview report referenced in the exhibits, by October 29, 2026,

or sooner, and (2) permitting Mr. Luthor to introduce, at the time the government offers any excerpt, the portions of the thread that in fairness ought to be considered with it.

## V. The Government Should Be Required to Make a Pretrial Proffer.

To permit the Court to resolve these issues efficiently and outside the jury's presence, Mr. Luthor requests that the government be ordered, by October 29, 2026, to file or serve a proffer that (a) identifies each Exhibit 16 exhibit it will offer, and the specific messages within each exhibit on which it relies, (b) states the issue or count to which each is offered, (c) states the evidence on which it relies to prove that Mr. Luthor authored each message attributed to him, (d) states, for each message attributed to Mr. Luthor, whether a corresponding message appears in the extraction of the phone the government attributes to him, and (e) for each image exhibit, identifies where on the device it was found and whether and to whom it was sent. Alternatively, the Government is free to withdraw exhibit 16 in its entirety.

## CONCLUSION

Mr. Luthor respectfully requests that the Court order the following. First, the government shall make the pretrial proffer described in Part V, no message attributed to Mr. Luthor shall be shown to the jury until the Court has found a sufficient foundation of authorship under Rules 104(b) and 901, and Exhibit 16(u)

(and all similar violating exhibits) shall be excluded unless the government establishes its authorship at a hearing outside the jury's presence. Second, Exhibits 16(eee), 16(fff), 16(iii), 16(jjj), and 16(kkk) shall not be presented as communications with Mr. Luthor, shall be received only on a proper foundation, shall be subject to limiting instructions under Rule 105, and Exhibit 16(eee) shall be redacted as described above. Third, the series shall be limited under Rule 403, personal content unrelated to the business statements shall be redacted, and each exhibit shall be identified to the jury only by number and date. Fourth, the government shall produce the complete thread, and Mr. Luthor may complete any excerpt at the time it is offered under Rule 106.

Respectfully submitted,

Dated: October 27, 2026

/s/ Thomas C. Plunkett
Thomas C. Plunkett
Attorney No. 260162
First National Bank Building
332 Minnesota St.
Suite W1610
St. Paul, MN 55101
Phone: (651) 222-4357
Email: tcp@tp4justice.com
**Attorney for Gabriel Luthor**