**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
*Criminal No.: 25-CR-88 (1) (ECT/LIB)*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>Vs.<br><br>GABRIEL ADAM ALEXANDER LUTHOR ET AL,<br><br>Defendants. | **DEFENDANT GABRIEL LUTHOR'S MOTION TO SEVER HIS TRIAL FROM CO-DEFENDANT BROWN'S, OR IN THE ALTERNATIVE FOR A MISTRIAL AS TO HIM, AND FOR RELATED RELIEF** |

Defendant Gabriel Adam Alexander Luthor, through his counsel, Thomas C. Plunkett, moves under Federal Rule of Criminal Procedure 14(a) for an order severing his trial from that of co-defendant Elizabeth Christine Brown. Because the jury has been sworn and the government's case is underway, severance now requires a mistrial as to Mr. Luthor, and he moves for that relief. In the alternative, he asks for the limiting measures set out in Part IV. The motion rests on the cross-examination of Ryan Kapaun by Ms. Brown's counsel on November 12, 2026, at which Mr. Luthor objected and marked the record for this motion. (Trial Transcript Vol. V at 224:19–22.)

## INTRODUCTION

On November 1, the Court denied Ms. Brown's own motion to sever. It found no antagonism in the relevant sense because Ms. Brown "does not . . . claim

that she was under duress or coercion," and because the government's evidence that Mr. Luthor controlled others "would be admissible in the same way in the joint trial as severed trials." (ECF No. 194 at 2–3.) Both premises have changed.

On November 12, Ms. Brown's counsel used the government's case analyst to present an affirmative case that Mr. Luthor dominated her. He elicited Mr. Kapaun's characterization of 45,000 messages, almost none of them in evidence, that Ms. Brown's apologies and statements that "It's all my fault" were a "common theme" from 2019 into 2023, and that "Quit texting me" and "Obey" came from Mr. Luthor. He read aloud portions of exhibits the government had not read, offered and published four exhibits the government had chosen not to offer, and then elicited itemized lifestyle detail of the kind the Court's order permits only in the aggregate. The government did not object to any of it.

That is the defense Ms. Brown announced in opening: that "[t]he person that was running the show was Mr. Luthor," that "the only intent my client had was to please," that "[h]e was to be obeyed," and that the jury should see the case "through the prism of their dynamic." (Vol. II at 102:20–103:10.) It is a coercion defense in all but name, and it is being prosecuted against Mr. Luthor by a party who is not bound by the government's disclosure duties, the Court's limits on the government's evidence, or the government's assurances to the Court. The same afternoon, Ms. Brown's counsel told the Court that allegations of physical assault

are "relevant for my client," and the Court ruled that if either defendant offers evidence of difficulty leaving Mr. Luthor, the government may call on rebuttal a witness the Court has excluded as unduly prejudicial. (Vol. V at 272:22–273:5, 275:8–10.) Whether Mr. Luthor's jury hears that evidence now depends on decisions made by his co-defendant's counsel. A limiting instruction cannot fix that.

## BACKGROUND

### A. The Court's pretrial rulings

The Court granted the government's motion to admit evidence of Mr. Luthor's control and status, explaining that the government's theory is that he "was at the helm giving orders to Brown." (ECF No. 176 at 6–7.) The ruling rested on the government's assurance "that the number of statements related to Luthor's status it seeks to introduce is limited," and the motion was granted "with the understanding that needlessly cumulative evidence will be excluded." (Id. at 7.) The Court admitted wealth and spending evidence "only in the aggregate by category." (Id. at 6.) It deferred Defendants' Joint Motion in Limine 9 to preclude overview and case-agent opinion testimony until the issue arose at trial. (Id. at 2.)

Ms. Brown moved to sever on October 30, asserting that new allegations by B.M. "will now require Ms. Brown to not only point a finger at Mr. Luthor but also allege exploitation, sexual and physical assault." (ECF No. 194 at 1, quoting ECF No.

183 at 6.) The Court denied the motion because she had not identified a defense "legally irreconcilable with Mr. Luthor's defenses," did not claim duress or coercion, and because control evidence would come in the same way at separate trials. (Id. at 2–3.)

**B. Ms. Brown's opening statement**

In opening, Ms. Brown's counsel told the jury that the counts concerning communications "relate to my client, because my client was the day-to-day operator," and continued:

> [M]ake no mistake about it. The person that was running the show was Mr. Luthor. And then, really, what you're going to hear is the only intent my client had was to please, and I'm going to ask you to see this case through the prism of their dynamic . . . . It's about the idea that there was control. The Government presented some of that already to you. He was to be obeyed. And there will be evidence of economic abuse, financial abuse, manipulation, and he controlled the money.

(Vol. II at 102:15–103:5.) He closed by asking the jury to view all of the billing evidence "in the prism of their dynamic." (Id. at 105:6–11.) On cross-examination of the government's first witness, he elicited that everyone "got quiet" when Mr. Luthor walked in and that he "was running the show." (Id. at 141:15–22.)

**C. Ms. Brown's cross-examination of Ryan Kapaun**

Mr. Kapaun is the Eden Prairie crime analyst who compiled the Exhibit 16 text-message exhibits from Ms. Brown's phone. The government ended its direct

by asking how often the messages discussed patient care. (Vol. V at 193:5–8.) Ms. Brown's counsel then asked Mr. Kapaun how many times, in the 45,000 messages he reviewed, Ms. Brown told Mr. Luthor "I failed you" ("several times"), apologized ("[s]everal times"), and said "It's all my fault" ("[s]everal times"). (Id. at 211:22–212:4.) Mr. Kapaun agreed that this was "a common theme throughout these messages" from 2019 into 2023. (Id. at 212:5–12.) He then agreed that "Quit texting me" and "Obey" came "[f]rom him." (Id. at 212:13–21.)

Counsel next had Mr. Kapaun read Ms. Brown's side of portions of Government Exhibits 16c, 16e, 16f and 16h that the government had not read, while counsel read Mr. Luthor's side aloud to the jury, including "I want you to stop saying that crap and obey. Don't text me again," and "Stop texting and work. Not another text. Obey." (Id. at 213:3–217:24.) He then offered and published four exhibits the government had not offered: Exhibit 16j, a profane message telling Ms. Brown to stop calling herself a "screwup" (id. at 218:12–219:4), Exhibit 16ww (Id. at 221:8–22), Exhibit 16yy, in which Mr. Luthor writes, "I have heard this crap way to[o] many times" and "without money no one survives" (Id. at 222:10–223:24), and Exhibit 16bbb (Id. at 224:17–225:12). The government did not object to any of them. (Id. at 218:13, 221:9, 222:11, 224:18.) Mr. Luthor objected to 16ww, 16yy and 16bbb as cumulative, and when 16bbb was offered he marked the record for a further motion. (Id. at 221:10, 222:12, 224:19–22.)

Finally, counsel elicited that proceeds of the April 2022 contract for deed went into GVM's account and then to water trucks in the Congo through "an investment called Luthor Inc.," that the contact for that purchase was the wife of the defendants' "personal chauffeur, personal driver," and the driver's name. (Id. at 225:21–228:11.) Mr. Luthor objected on scope, relevance and the Court's order, and the Court overruled the objection. (Id. at 227:21–228:2.)

**D. The rulings the same afternoon**

After the jury was excused, the Court adhered to its ruling excluding the testimony of Ms. Lawrence because its relevance was outweighed by potential prejudice, and added: "if there is testimony in a case that either defendant offers regarding an inability or difficulty, what difficulty there may be in leaving Mr. Luthor, then you've got that on rebuttal." (Vol. V at 272:22–273:5.) As to B.M., Ms. Brown's counsel told the Court that "there were other allegations put in there of a physical assault that she witnessed that I do believe are relevant for my client," and that she would describe "Mr. Luthor being sort of a god and people being different goddesses." (Id. at 275:8–16.) The Court excluded any testimony about sexual or physical assault under Rule 403. (Id. at 276:8–11.)

Mr. Luthor has been hospitalized or recovering and unable to attend trial, and the jury has been told only that he is physically unable to attend. (See Vol. III at 30:19–20.)

## ARGUMENT

### I. This Motion Is Timely, and the Court Has a Continuing Duty to Sever if Prejudice Appears.

"[T]he trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960). A severance motion is ordinarily made before trial, Fed. R. Crim. P. 12(b)(3)(D), but the Court may consider it later for good cause, Fed. R. Crim. P. 12(c)(3). Good cause exists here because the prejudice did not exist before trial. It arose from evidence a co-defendant elicited on November 12, and Mr. Luthor objected and marked the record the moment it became clear. (Vol. V at 224:19–22.) The Eighth Circuit requires exactly this. When events at trial differ from what was expected, a severance motion must be made "so that the trial court can rule on the motion with the benefit, and in light of, knowledge of the true (and changed) situation." *United States v. Dobin*, 938 F.2d 867, 869 (8th Cir. 1991).

### II. The Legal Standard

Rule 14(a) authorizes the Court to "sever the defendants' trials, or provide any other relief that justice requires" when joinder "appears to prejudice a defendant." Severance is required when "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). The Supreme Court identified the risk presented

here: it "might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant." *Id.* Mutually antagonistic defenses "are not prejudicial per se," *id.* at 538, but real prejudice is shown when a defense is "irreconcilable with the defense of [a] codefendant" or "the jury will be unable to compartmentalize the evidence as it relates to separate defendants." *United States v. Gutberlet*, 939 F.2d 643, 645 (8th Cir. 1991). Defenses are irreconcilable when "the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Jones*, 880 F.2d 55, 63 (8th Cir. 1989) citing *United States v. Bruno*, 809 F.2d 1097, 1103 (5th Cir.). They require severance when "there is a danger that the jury will unjustifiably infer that this conflict alone demonstrates that both are guilty." *United States v. Ortiz*, 315 F.3d 873, 898 (8th Cir. 2002). The prejudice must be "severe or compelling." *United States v. Pherigo*, 327 F.3d 690, 693 (8th Cir. 2003).

## III. A Joint Trial Now Compromises Mr. Luthor's Right to a Fair Trial and the Reliability of the Verdict.

### A. Ms. Brown's defense is irreconcilable with Mr. Luthor's at its core

Mr. Luthor's defense is that he was a businessman, not a provider, and that he did not choose codes, submit claims or know that claims were false. Ms. Brown's defense, as her counsel put it to the jury, is that Mr. Luthor "was running the show," that "[h]e was to be obeyed," and that "the only intent [she] had was to

please" him. (Vol. II at 102:20–103:5.) For the jury to accept that Ms. Brown lacked intent because she was carrying out Mr. Luthor's will, it must find that Mr. Luthor directed what she did, which is the core of what Mr. Luthor denies. That is the irreconcilability *Jones* describes, 880 F.2d at 63, and it carries the further danger that a jury hearing each defendant point at the other will infer that both are guilty. *Ortiz*, 315 F.3d at 898.

This is not the generic finger-pointing the Court addressed on November 1. *See* ECF No. 194 at 2 (citing *United States v. Boyd*, 610 F.2d 521, 526 (8th Cir. 1979)). The Court then found that Ms. Brown had not identified an antagonistic defense and did not claim duress or coercion. (Id.) She has now identified it, in opening and in evidence. She does not use the word duress, but her evidence is offered for the same purpose a duress defense would serve: to show that she could not act independently of Mr. Luthor. Her counsel has told the Court he wants evidence of physical assault because it is "relevant for my client." (Vol. V at 275:8–10.) That is the coercion theory the Court found absent, presented without the elements the Court said it would require. *See* ECF No. 194 at 2–3 (citing *United States v. May*, 727 F.2d 764, 765 (8th Cir. 1984)).

### B. Ms. Brown's counsel is acting as a second prosecutor, offering evidence that would not be admissible against Mr. Luthor at a separate trial

Joinder of antagonistic defendants "may introduce what is in effect a second prosecutor into a case, by turning each codefendant into the other's most forceful

adversary." *Zafiro*, 506 U.S. at 544 (Stevens, J., concurring in the judgment). Courts have reversed when that occurred. *See United States v. Romanello*, 726 F.2d 173, 174 (5th Cir. 1984). The concern is acute here because the evidence Ms. Brown elicited is evidence the government did not offer and could not have offered against Mr. Luthor if he were tried alone. *Zafiro*, 506 U.S. at 539.

*First*, the analyst's characterization of 45,000 messages. Mr. Kapaun told the jury how often Ms. Brown apologized and blamed herself, and that this was a "common theme" for four years. (Vol. V at 211:22–212:12.) Almost none of those messages is in evidence. His answers are opinion drawn from his review, not from personal knowledge of the relationship, Fed. R. Evid. 602, 701, and they are not a proper summary because the underlying messages were neither offered nor identified, Fed. R. Evid. 1006. This is the overview and case-agent opinion testimony that is the subject of the deferred Joint Motion in Limine 9. (ECF No. 176 at 2.) At a separate trial, the government could not elicit it. In this trial, Ms. Brown did, and no one but Mr. Luthor objected.

*Second*, the additional control exhibits. The Court admitted the government's control evidence on the government's assurance that the number of such statements would be "limited," and with the understanding that "needlessly cumulative evidence will be excluded." (ECF No. 176 at 7.) The government chose not to offer Exhibits 16j, 16ww, 16yy or 16bbb, and chose not to read the portions of

16c, 16e, 16f and 16h that Ms. Brown's counsel read. Ms. Brown offered them, the government did not object, and the cumulative objections were overruled. The purpose of that evidence is to show that Mr. Luthor was harsh, profane and demanding toward his partner. Character evidence offered to prove action in conformity is barred regardless of who offers it, Fed. R. Evid. 404(a)(1), and at a separate trial the government would have been held to its assurance and to the Court's limit.

*Third*, the lifestyle detail. The Court permitted wealth and spending evidence "only in the aggregate by category." (ECF No. 176 at 6.) Ms. Brown elicited the defendants' "personal chauffeur, personal driver," his name, and the purchase of water trucks in the Congo through an entity bearing Mr. Luthor's name. (Vol. V at 225:21–228:11.) The government could not have offered that itemized detail. Ms. Brown could, and did.

*Fourth*, none of the procedural protections that bind the government applies to Ms. Brown. She owes no Rule 16 or Jencks Act disclosure, gives no Rule 404(b) notice, and made no assurances to the Court about the volume of her control evidence. The government, for its part, need not offer the evidence or answer for it. It need only remain silent, as it did on November 12. Mr. Luthor faces two accusers, and the second is not subject to the rules that make the first fair.

### C. Mr. Luthor's exposure to excluded evidence now depends on his co-defendant's choices

The Court has excluded Ms. Lawrence's testimony as unduly prejudicial and has excluded B.M.'s allegations of sexual and physical assault. (Vol. V at 272:22–273:1, 276:8–11.) But the Court also ruled that if "either defendant" offers testimony of "inability or difficulty . . . in leaving Mr. Luthor," the government may call Ms. Lawrence on rebuttal. (Id. at 273:2–5.) Ms. Brown's defense is built on that very theme, and her counsel has told the Court that he regards assault evidence as relevant to her case. (Id. at 275:8–16.) At a separate trial, Mr. Luthor alone would decide whether to open that door, and he would not open it. In this trial, Ms. Brown holds the key. Evidence the Court has found too prejudicial to admit against Mr. Luthor will reach his jury if his co-defendant decides to pursue her defense. That is a serious risk to a specific trial right, *Zafiro*, 506 U.S. at 539, and it cannot be managed witness by witness without forcing Ms. Brown to abandon her defense or Mr. Luthor to absorb the consequences of it.

### D. A limiting instruction cannot cure the prejudice

"[L]ess drastic measures, such as limiting instructions, often will suffice." *Zafiro*, 506 U.S. at 539. They will not suffice here, for four reasons. First, no instruction has been given, and the exhibits were received without limitation. Second, the evidence goes to the only contested question as to Mr. Luthor, whether he directed the billing with intent to defraud, so an instruction would ask

the jury to set aside the evidence it is most likely to weigh. *See Bruton v. United States*, 391 U.S. 123, 135 (1968) ("there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored"). Third, the analyst's "common theme" testimony describes thousands of messages the jury has never seen, so there is nothing concrete for an instruction to isolate.

## IV. The Relief Requested

Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 539. At this stage, severance requires a mistrial as to Mr. Luthor and a separate trial. Mr. Luthor requests that relief. The cost of a separate trial is real, but the prejudice here comes from evidence and argument that belong to Ms. Brown's defense, not to the government's case, and a separate trial of Mr. Luthor would not include them.

If the Court declines to sever now, Mr. Luthor asks in the alternative that the Court:

1. Strike Mr. Kapaun's testimony at Vol. V at 211:22–212:21 and instruct the jury to disregard it.
2. Instruct the jury now, and again in the final charge, that it must consider the evidence separately as to each defendant, that it may not use Exhibits

16j, 16ww, 16yy and 16bbb, or the portions of other exhibits read by Ms. Brown's counsel, to conclude that Mr. Luthor is a person of bad character or acted in conformity with any character trait, and that statements of counsel in opening are not evidence.

3. Strike the testimony at Vol. V at 225:21–228:11, or instruct the jury that evidence of particular expenditures and household staff may be considered only as the Court's prior order permits.

4. Require Ms. Brown to proffer outside the jury's presence, before eliciting it from any witness or offering it in argument, any further evidence of Mr. Luthor's control, abuse or assault, or of any difficulty she had in leaving him.

5. Rule that evidence offered by Ms. Brown on those subjects will not open the door to rebuttal testimony against Mr. Luthor, including Ms. Lawrence's, or, if the Court would admit that rebuttal, grant severance before it is offered.

Mr. Luthor asks that the record reflect a continuing objection to evidence and argument by Ms. Brown on these subjects. He will renew this motion at the close of the government's case and at the close of all the evidence.

## CONCLUSION

Mr. Luthor respectfully asks the Court to sever his trial from Ms. Brown's and declare a mistrial as to him, or, in the alternative, to grant the relief set out in Part IV.

Respectfully submitted,

Dated: November 15, 2026

/s/ Thomas C. Plunkett
Thomas C. Plunkett
Attorney No. 260162
First National Bank Building
332 Minnesota St.
Suite W1610
St. Paul, MN 55101
Phone: (651) 222-4357
Email: tcp@tp4justice.com
**Attorney for Gabriel Luthor**